## OX FIBRE BRUSH CO. v. BLAIR, Commissioner of Internal Revenue.

Circuit Court of Appeals, Fourth Circuit.
April 9, 1929.

No. 2753.

Harry B. Sutter, of Chicago, Ill. (Albert L. Hopkins, O. John Rogge, and John Enrietto, all of Chicago, Ill., on the brief), for petitioner.

Morton P. Fisher, Sp. Asst. Atty. Gen. (Mabel Walker Willebrandt, Asst. Atty. Gen., and Dorothy A. Moncure, Atty., C. M. Charest, Gen. Counsel, and L. W. Scott, Sp. Atty., Bureau of Internal Revenue, all of Washington, D. C., on the brief), for respondent.

Before PARKER and NORTHCOTT, Circuit Judges, and COLEMAN, District Judge.

WILLIAM C. COLEMAN, District Judge. This is an appeal for review of a decision of the United States Board of Tax Appeals, affirming the finding of the Commissioner of Internal Revenue that there was a deficiency of $24,091.60 in the income and profits tax for the calendar year 1920, paid by the petitioner, the Ox Fibre Brush Company, hereinafter called the company. The deficiency as claimed arose from the fact that the company had deducted from its net income the sum of $48,000, one-half of which having been voted in 1920 to the company's president as "extra compensation for his past services," and a like sum, by similar resolution, to the company's treasurer. The company claimed the right to make this deduction by virtue of section 234(a)(1) of the Revenue Act of 1918 (40 Stat. 1077), which is as follows:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * * *"

The material facts as disclosed by the evidence are as follows:

The company, a West Virginia corporation, during the year 1920 and for many years prior thereto, had been engaged in the manufacture of brushes, its factory being located at Frederick, Md., with executive offices and sales headquarters in New York City, and branch sales offices in St. Louis, Cincinnati, Philadelphia, and Boston. Mr. Robinson, the company's president during the year 1920, had served the company in this same capacity since 1906, and Mr. McEwen, the treasurer in 1920, had held the same office since 1907. Both of these officers had devoted their entire time to the company's interests since 1907. Each year they had personally guaranteed bank loans of considerable size made to the company. Prior to 1917, a technical expert had managed the company's plant, for which he received $10,000 per annum; but in that year the president and treasurer assumed general management of the plant. The services of the technical expert were dispensed with, and in his place a factory superintendent was employed at a much lower salary. In addition to their regular executive duties, the president and treasurer handled all large purchases, directed all sales, the hiring of personnel, and also directed the general policies of the company. Prior to Mr. Robinson's and Mr. McEwen's administration of the business, it had been in a chaotic state and operated at a loss, but under their direction and control the gross sales of the company increased from

$374,236.66 in 1909 to $1,273,474.72 in 1920; the net income increased from an operating loss of $3,972.44 in 1908 to net earnings, after deduction of salaries, including the amounts here in question, of $158,753.67 in 1920. No dividends were paid until 1910, but were increased from $4,500, in 1911 and 1912, to $433,275, in 1920, represented by 50 per cent. stock dividend of $300,000 and cash dividends aggregating $123,275, or 25.98 per cent. on the outstanding capitalization at the beginning of that year; that is to say, under the new management, the company advanced from the status of a poor competitor with other corporations employing contract prison labor in the manufacture of brushes to a leading place in the brush trade. The percentage of officers' salaries to gross income for 1920 was 5.8 per cent. The percentage of officers' salaries to net income, before deducting salaries, was 32.08 per cent., and the percentage of net income, after paying salaries and all other expenses, to outstanding capital stock, was 33.44 per cent. The net income in 1920, namely, $158,753.67, after deduction of all expenses including officers' salaries, represented a return of 21.13 per cent. on invested capital of $751,038.31, as determined by the Commissioner of Internal Revenue for that year. As a result of the bureau's disallowance of the $48,000 here in question, the taxable net income for 1920 of the company was $206,753.67; or a return of 27.53 per cent. on invested capital and surplus.

In 1919 and 1920, $12,000 and $15,000 had been paid as salaries to the president and treasurer, respectively. In 1918 their combined salaries were approximately $25,000. The record does not disclose what they received in 1915, 1916, and 1917, but in 1914 they together received $16,000; in 1913, $11,000; in the three preceding years, $10,000, before which they received $6,000. On May 6, 1920, the board of directors, at a meeting duly called, unanimously voted to pay each of these officers additional compensation of $24,000. The following appears from the minutes of this meeting:

"This meeting having been specially called for the purpose of considering and acting upon the proposal for a grant of additional compensation to Mr. J. K. Robinson, Jr., and to Mr. Alfred McEwen, for their past services to the company,  *  *  *

"Resolved, that this board hereby authorize and direct the payment of the sum of twenty-four thousand ($24,000) dollars to Mr. J. K. Robinson, Jr., as extra compensation for his past services to this company as an officer thereof, and in any other capacity, the same to be paid when in the discretion of the officers, funds of this corporation for this purpose are available.

"Resolved, that this board authorizes and directs the payment of the sum of twenty-four thousand ($24,000) dollars, to Mr. Alfred McEwen as extra compensation for his past services to this company as an officer thereof and in any other capacity, the same to be paid when, in the discretion of the officers, funds of this corporation for this purpose are available."

The petitioner's books were kept on an accrual basis, and during the month of May, 1920, proper entries were made therein, crediting the accounts of the president and the treasurer with the additional compensation voted as aforesaid, and charging the expense accounts therewith. The president and treasurer and their immediate families owned approximately 36 per cent. of the stock of the company. The remaining stock was mostly owned by the company's employees.

On this evidence, the Board of Tax Appeals found, first, that the additional compensation voted to the company's president and treasurer in 1920 was intended to be as and for, and was as and for, salaries for the year 1920; second, that the action of the company's board of directors in so voting did not raise a presumption that the extra compensation was in fact reasonable for services actually rendered; and, third, that such extra compensation was in excess of reasonable compensation for services performed in 1920, on the ground that the duties performed were not materially different from those performed in preceding or succeeding years for which the compensation received was, the board asserted, not shown to have been inadequate, although it was conceded that the officers were efficient and brought prosperity to the company, and that the additional compensation was a merited recognition by the company of their valuable services rendered prior to 1920. There are 14 assignments of error, which, summarized, question all three of these findings. We will consider these findings in the order stated.

First. To say that the additional compensation voted to the company's president and treasurer in 1920 was intended to be as and for, and was as and for, salaries for the year 1920, is to torture the very language of the resolutions themselves. The payment to each officer is expressly stated to be "extra compensation for his past services," not merely *measured by* such services. The wording could scarcely be clearer. Whether, if the

resolution had been differently worded—for example, if the extra compensation had been voted "to make up for lack of same in past years"—the present finding of the Board of Tax Appeals on this point might have been justified, it is not necessary for us to decide. See Vaughn & Barnes, Inc., v. Commissioner, 6 B. T. A. 1279. Therefore this first conclusion of the board we find to be erroneous and not binding. While the board's findings of primary facts are conclusive, the court must inquire into other facts in order correctly to determine whether the board's conclusion is supported by the evidence, namely, whether it is in accordance with law. We find no evidence whatsoever to support this conclusion. The jurisdiction of this court to review decisions of the Board of Tax Appeals is conferred by the Revenue Act of 1926 (26 USCA § 1226(b), which is as follows: "Upon such review, such courts [Circuit Courts of Appeals] shall have power to affirm or, if the decision of the board is not in accordance with law, to modify or to reverse the decision of the board * * * as justice may require." As was said in Bishoff v. Commissioner (C. C. A.) 27 F.(2d) 91, 92:

"This provision is within the trend of recent legislation respecting fact finding tribunals with special judicial powers such as the Federal Trade Commission whose 'findings of fact, if supported by testimony,' are made conclusive (Comp. Stat. § 8836a-k [15 USCA §§ 41-51]; Curtis Pub. Co. v. Federal Trade Commission [C. C. A.] 270 F. 881, 911), and is generally regarded, because of the power to modify or reverse such of the board's decisions as are 'not in accordance with law,' as conferring upon the designated appellate courts jurisdiction to review not questions of fact such as complicated accounts and disputed values but only matters of law such as are raised by writ of error on review of a judgment entered on the verdict of a jury. Avery v. Commissioner (C. C. A.) 22 F.(2d) 6 [55 A. L. R. 12]; Brown v. Commissioner (C. C. A.) 22 F.(2d) 797. Even accepting as conclusive the board's findings of primary facts, it sometimes happens that the reviewing court must inquire, as on writ of error, into the ultimate fact finding in order correctly to determine whether the decision is validly supported by evidence and therefore is 'in accordance with law.' "

See, also, Royal Packing Co. v. Commissioner (C. C. A.) 22 F.(2d) 536.

▉ Turning to the Board of Tax Appeals' second conclusion, we are likewise forced to declare that to be erroneous. The action of the board of directors of a corporation in voting salaries for any given period is entitled to the presumption that such salaries are reasonable and proper. This presumption, however, is not conclusive. Becker Bros. v. United States (C. C. A.) 7 F.(2d) 3. In other words, the payment of large salaries to officers may well prompt an inquiry into the question whether the amounts paid as salary are such in fact, rather than a distribution of profits in the guise of salary. The statute imposes two requirements: First, that the proposed allowance shall be a *necessary* expense and second, that it shall be reasonable. If the allowance has no substantial relation to the measure of officers' services and is utterly disproportionate to their value, it is not in reality payment for services and so cannot be regarded as "ordinary and necessary expenses." See Botany Worsted Mills v. United States, 49 S. Ct. 129, 73 L. Ed. ——; United States v. Philadelphia Knitting Mills Co. (C. C. A.) 273 F. 657. Likewise the allowance is not to be permitted if and to the extent that, as compensation, it is relatively unreasonable, even though not of such an extraordinary, unusual, or extravagant amount as to condemn it entirely, as in no sense compensation for services. The prima facie presumption in favor of the action which a corporation has taken in cases of this kind has repeatedly been recognized by the Board of Tax Appeals itself. For example, see Collins-McCarthy Candy Co. v. Commissioner, 4 B. T. A. 1280; Standard Silk Dyeing Co. v. Commissioner, 9 B. T. A. 648. This presumption is in no wise inconsistent with the principle that the burden of proof rests upon the taxpayer. W. K. Henderson Iron Works & Supply Co. v. Blair (App. D. C.) 25 F.(2d) 538, and cases cited. The taxpayer in the present case has, we think, fully sustained the burden of proof for the reasons hereinafter explained.

▉ It follows from what has been said that it is unnecessary to pass upon the correctness of the board's third conclusion, namely, that the extra compensation was in excess of reasonable compensation for services performed in 1920, except in so far as such determination may assist in deciding whether the present deductions are reasonable for *past years;* but it becomes necessary first to decide whether deductions for past years are permissible under the statute.

It is our conclusion that such deductions are permissible. The language of the statute with respect to allowable deductions is "all the ordinary and necessary expenses *paid or incurred* during the taxable year in carrying

on any trade or business, including a reasonable allowance for salaries or other compensation for personal services *actually rendered.*" (Italics inserted.) The statute does not limit its application to services rendered *within the taxable year*. The test of whether an item is deductible lies in the answer to the question: In what year has a fixed liability for its payment arisen? Only for such year is the payment deductible, and, therefore, it is not to be allocated over other years in which the services may have been rendered. This is quite different from saying that, where, as here, books are kept on the accrual basis, the deduction may not include compensation, *fixed* or paid in the taxable year, for services *rendered* in prior years. In defining the terms "paid or incurred" and "paid or accrued," the act (section 200, 40 Stat. 1058) merely says that they "shall be construed according to the method of accounting upon the basis of which the net income is computed under section 212"; that is, on the cash or the accrual basis, or by such other method as clearly reflects the income. But a salary can neither be "incurred" nor can it have "accrued" until the payor's liability for the same has been fixed; that is, until the company, in the present case, has voted it payable. For this reason, expenses of this kind are not to be confused with taxes, and therefore such decisions as United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347, upon which the government relies, are not controlling. In that case the Supreme Court held that the tax imposed by the munitions tax act of 1916 was a proper accrual and was deductible for 1916, though it was not required to be paid until 1917, where all the events which *fixed* the amount of the tax and *determined the liability* occurred in 1916, since the gross income for 1916 could not have been determined without deducting therefrom the reserve set up for the munitions tax as a part of the total cost and expense attributable to the production of income for that year.

As for the case of Illinois Cent. R. Co. v. Interstate Commerce Commission, 206 U. S. 441, 27 S. Ct. 700, 51 L. Ed. 1128, which the government has also stressed in support of its contention, merely to state what the court there held,—that "instrumentalities which are to be used for years should not be paid for by the revenues of a day or year" (206 U. S. 463, 27 S. Ct. 708), is to refute completely its application to the present facts. Current salaries are not capital investments. We are not unmindful of the

fact that the Seventh Circuit, in W. S. Bogle & Co. v. Commissioner (C. C. A.) 26 F.(2d) 771, in construing a similar provision of the Income Tax Act of 1916, 39 Stat. 756, held that the Board of Tax Appeals properly refused to allow a deduction for salary payment made to a corporation's president as compensation for previous years, saying (page 772): "This statute was intended to allow ordinary and necessary expenses paid and incurred within the year for officers' salaries. Where a salary has been fixed and fully paid for one year, it cannot be increased in some later year (when profits are larger) and the increase deducted from the net profits of the prosperous year." Prima facie, this statement would appear to be in conflict with the principle that we here announce, but it may not be so intended, because it is to be noted that the court speaks of a salary "fixed and *fully* paid" for a previous year, implying, as it would seem, that the additional compensation rendered the total salary unreasonable and excessive. At least the opinion is so phrased as to leave room for doubt on this point.

So, also, the case of W. K. Henderson Iron Works & Supply Co. v. Blair, supra (Court of Appeals, District of Columbia), decided merely that a salary voted in one year for services performed in a preceding year and disallowed as a deduction for such preceding year, is likewise not allowable for the year in which voted, *in the absence of proof to sustain its reasonableness*.

That the practice here sanctioned may be subject to abuse is not sufficient to condemn it. Whether there is actual abuse becomes a question of fact in each case. A corporation with a large surplus in a given year may attempt to dispose of that surplus in the guise of salaries and thereby evade its full tax burden, but there is no evidence that such occurred in the present case; nor is there any bad faith to be deduced from the fact that these officers, together with their families, owned approximately 36 per cent. of the company's stock. The additional compensation was voted to them not because they were stockholders, but because they performed services as employees of the corporation which its board of directors believed to have been peculiarly valuable. If rigid rules of accounting are allowed to supplant that reasonable amount of flexibility which must, from the very nature of things, go hand in hand with the vicissitudes of business, loyalty and ambition on the part of employees will become deadened, and those persons

whose services are essential to the success of a given enterprise will be unavailable at the very time when they are most needed. For a corporation to defer payment of full compensation to its employees in times of stress, is no different in principle from the deferring of any of its other obligations. Both must be met in due course. Tax laws should aim to encourage, not to oppose, this result, and should be so construed, unless clearly expressive of a contrary intent.

In the present case, the fact that the prior years are not specifically designated is not material, because evidence as to which years were referred to is not lacking. In 1917, through the reorganization which the president and treasurer had brought about, the company was put upon a paying basis, and from then on the business became increasingly successful. In that year they took over the general management of the factory, and, in addition to their regular executive duties, handled all large purchases, directed all sales, the hiring of the personnel, and all questions of general policy. It further appears that shortly prior to May 7, 1920, when the resolutions in question were passed, these officers had rendered special services to the corporation looking towards a possible merger with other companies, and at about this time the question of additional compensation was broached, but definite action thereon was postponed.

█ The government appears to rely upon the fact that the corporation's books were kept on an accrual basis and not on a receipts and disbursements basis. It argues (referring to section 212(b) of the act of 1918, 40 Stat. 1064) that, the accrual basis having been adopted, it must be consistently followed in a manner which clearly reflects income, and that expenses can only be deducted in the year to which they are attributable. With this statement we entirely agree, but the method of bookkeeping makes no difference in the present situation. "To incur" means "to become liable or subject to." While an obligation that has *accrued* may also be said to be synonymous with one that has been *incurred*, the fact remains that there would have been no authority to enter the salaries in the present case as accrued until they had been voted or fixed. Under the accrual system, an expense accrues when all events have occurred from which liability is determined and has become fixed, even though payment be not yet due; that is to say, the basic idea is that the books shall immediately reflect obligations and expenses definitely in-

curred, and income definitely earned, without regard to whether payment has been made or is due. This was the theory upon which the case of United States v. Anderson, supra, was decided. Thus, when in the present case the government argues that, if a resolution, authorizing additional compensation, be passed subsequent to the year in which the services to be compensated were rendered, the corporation must allocate the payment to the proper years and file amended returns for those years, claiming the deduction in the amended return, it misconceives the basic idea of the accrual plan.

The principle has been clearly stated by the Board of Tax Appeals in a number of cases. For example, in the Appeal of Van De Kamps Holland Dutch Bakers, 2 B. T. A. 1247, the board rightly held that additional compensation voted to a company's officers in 1920 for 1919 services was not deductible from 1919 income, saying (page 1251): "It remains to determine in what year the deduction is to be allowed. Was the obligation incurred in the year when the services were rendered or was it incurred when the additional compensation was voted? Until it was voted there was nothing more than a moral obligation; there was no legal obligation which could be enforced. We must accordingly hold that the $7,000 of additional compensation, voted in 1920 for services rendered in 1919, was an obligation incurred in 1920 and is deductible in that year and not in 1919." To the same effect, see Appeal of Arter Paint & Glass Co., 2 B. T. A. 1256; Appeal of Randall Bros., Inc., 4 B. T. A. 291; Roubaix Mills, Inc., 7 B. T. A. 878. Relying upon these and similar decisions, the Bureau of Internal Revenue, in 1927, adopted regulations in conformity with what was there said. General Counsel's Memorandum 941, Internal Revenue Cumulative Bulletin, vol. VI, No. I, page 205 (1927). We are unable to reconcile the above-mentioned decisions of the board and the ruling of the bureau with other decisions of the board, or with the position which it has taken in the present case.

█ We now come to the final question to be decided, namely, whether the additional salaries were reasonable compensation for services rendered prior to 1920. The board in its opinion states that "there is nothing in the record to indicate that additional salaries might be expected or would be granted in the future, and there is nothing to indicate that the duties performed were materially different from those performed in the preced-

ing or succeeding years. It is not intimated that the compensation received prior to 1920 was inadequate. Under these circumstances, we are of the opinion that the salaries paid by the petitioner to its officers in years prior to and subsequent to 1920 is the best evidence of their reasonableness and their value to the petitioner in that year."

We have already shown the error into which the board fell, in considerng the additional compensation from the aspect of its reasonableness as salary payments for the year 1920. We have also pointed out that the evidence clearly indicates that the duties performed by the president and treasurer were materially different in the three years prior to, as well as in, 1920, from what they had previously been, and also that there was very definite intimation in 1919 that these officers were entitled to recognition for the part which they had played in making the business so successful. So from no angle can we accept the aforegoing finding of the board as properly reflecting the evidence in the case. If, as appears, during the years 1917, 1918, and 1919, the duties of both the president and treasurer were doubled, and satisfactorily performed, is it reasonable to conclude that each were not entitled, for services in each of these years, to an additional compensation of $8,000—that is, to one-third of $24,000—voted to each in 1920, or that, a fortiori, these allowances would not have been reasonable if prorated over a greater number of years?

We think not, especially in view of the fact that salaries generally were being advanced during this period, because of the very radical advance in the cost of living. The company's board of directors unanimously declared in good faith that the services rendered were worth the additional compensation. Such action, as we have seen, raises a presumption of reasonableness, which has not been overcome. No testimony whatever was offered on behalf of the Commissioner in rebuttal.

The gross income of the company in 1918 and 1919, as well as in 1920, exceeded $1,-000,000. Adopting, merely for the sake of illustration, the theory of the Board of Tax Appeals that the additional allowances were for services in 1920, the total salaries paid to these officers in that year were $75,000, or less than 6 per cent. of the gross income. After deduction of these salaries and all other expenses, the return to stockholders exceeded 33 per cent. While, of course, each case must be determined upon its own peculiar facts, these percentages obviously do not reflect any impropriety in the allowances in question. See United States v. Reitmeyer (D. C.) 11 F.(2d) 648; Wood & Ewer Co. v. Ham (D. C.) 14 F.(2d) 995. This being true, when we divide and distribute these allowances equally over a period of three or more years, and add them to the salaries paid during those years, there is no ground for argument that for services in any of those years the remuneration has been unreasonable.

In view of what we have said, it becomes unnecessary to consider the relation of officers' salaries to outstanding capital stock for the year 1920. Nor is what the corporation did in the matter of salaries subsequent to 1920 pertinent to the present inquiry. The fact that the additional compensation was voted to the president and treasurer, respectively, as officers of the company "and in any other capacity," does not, we think, create any just ground for questioning the good faith or reasonableness of the corporate action, especially in view of the admittedly multifarious duties which the two officers performed in rehabilitating the business.

Because of our conclusions, it becomes unnecessary to consider those assignments of error which relate to the exclusion of certain evidence favorable to the company's contention.

The decision of the Board of Tax Appeals not being in accordance with law, because not supported by the evidence, is therefore reversed.