## SEABRIGHT WOVEN FELT CO. v. HAM, Collector of Internal Revenue.

District Court, D. Maine, S. D.
January 24, 1930.

Supplemental Opinion February 3, 1930.
No. 84.

Gaston, Snow, Saltonstall & Hunt, of Boston, Mass., and Verrill, Hale, Booth & Ives, of Portland, Me. (G. W. Matthews, of Boston, Mass., and Robert Hale, of Portland, Me., of counsel), for plaintiff.

C. M. Charest, Gen. Counsel, and E. E. Angevine, Atty., Bureau of Internal Revenue, both of Washington, D. C., and F. R. Dyer, U. S. Atty., and William B. Nulty, Asst. U. S. Atty., both of Portland, Me., for defendant.

PETERS, District Judge. This suit is brought to recover certain additional income taxes assessed against the plaintiff for the years 1918 and 1919 and paid under protest. The propriety of the deduction from its income by the plaintiff of certain sums paid to its officers and employees as additional salary and compensation is the basis of the dispute.

It appears that in January, 1919, the treasurer of the plaintiff corporation, on his own initiative, and without previous action by the board of directors on the subject, directed the bookkeeper to set up a reserve account for expenses, of which various items, aggregating $33,500, were designated as "salary reserve," and in July of that year the board of directors voted that "as additional compensation for loyal services actually rendered * * * the following gifts or bonuses be paid to our employees and officers for 1918, in addition to their regular salaries, said payment to take effect as of December, 1918, and the same is hereby approved and ratified." There followed a list of four persons, among whom $32,000 was to be divided, the other $1,500 going to smaller employees.

Very much the same thing happened in 1920, when in January of that year the treasurer again, without previous authority, so far as the evidence discloses, set up another reserve for salaries amounting to $20,500, and later on the directors voted that sum, as additional compensation for services rendered in 1919, to three of its officers or employees.

The various sums voted were afterward paid by the corporation.

The corporation in making its income tax return for 1918 used the bonus payments voted in 1919 as a part of the expenses of 1918 to be deducted from gross income to arrive at the net income. The same course was pursued the next year. The Internal Revenue Bureau disallowed these deductions. The additional payments made necessary by this action were made by the taxpayer which has brought this suit to have the alleged error of the Bureau corrected.

Taxes for both years in question were assessable under the Revenue Act of 1918 (40 Stat. 1077). By 234 (a) it is provided:

"That in computing the net income of a corporation subject to the tax imposed by section 230 there shall be allowed as deductions:

"(1) All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered. * * *"

The first question which presents itself is whether the sums paid by the plaintiff as additional expenses were "paid or incurred during the taxable years" in which they were used as deductions. Obviously it cannot be claimed that they were actually paid during those years, because no payments were made in either case until after the votes of the directors were passed in the year following the rendering of the services.

The plaintiff claims, however, that, where its books were kept on the accrual basis, as was permitted by law, and the services were rendered during the respective years in which they were charged for as expenses, they were accrued "in accordance with the method of accounting regularly employed" in keeping its books, and were therefore deductible in determining the net income of the plaintiff for those years.

The plaintiff cites sections 200 and 212 (b) of the Act of 1918, as follows:

"Section 200:

"That when used in this title— * * *

"The term 'paid,' for the purposes of the deductions and credits under this title, means 'paid or accrued' or 'paid or incurred,' and the terms 'paid or incurred' and 'paid or accrued' shall be construed according to the method of accounting upon the basis of which the net income is computed under section 212."

"Section 212 (b):

"The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * *"

No method of bookkeeping can be used to modify the effect of the provision of section 234 (a) that certain deductions, and therefore *only* certain deductions, shall be allowed to arrive at the taxable income.

It may be, as the plaintiff argues, that the plaintiff's income is better reflected by deducting the extra salaries from the years in which the services were rendered for which the additional sums were voted; but that cannot change the plain provision of the law, and we are confined to the question as to whether these bonus allowances (assuming them for the moment to be reasonable) were incurred during the taxable year in which charged.

To "incur" means to bring upon oneself indirectly by some act, to become liable to something.

In this case the corporation became liable for the salaries when voted by the directors. They were incurred; that is, they became a liability of the corporation when voted by the board of directors, and not before. The evidence shows that the by-laws of the corporation gave its treasurer only the ordinary powers of a treasurer, and no authority to fix salaries. He cannot make the corporation liable by entering up certain bonuses which he considers should be paid, even if payments of the same amount are subsequently ordered by the directors.

The basic idea of the bookkeeping in the accrual system is that the books shall immediately reflect obligations and expenses definitely incurred and income definitely earned without regard as to whether payment has been made or is due. Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42.

The case of S. Naitove & Co. Inc. v. Commissioner of Internal Revenue, 59 App. D. C. 53, 32 F.(2d) 949, 950, is very much in point. In that case it is said:

"The accounts under the agreement were kept on the books of appellant on an accrual basis, under which system these items of expense could not accrue until all the events occurred from which liability could be determined and become fixed. * * * Construing the provisions of the income tax law here involved, we are of the opinion that under the accrual system of accounting income may be said to be accrued when it is definitely received, and that likewise liabilities or expenses will be considered to have accrued only when the events have occurred from which liability or expense can be determined and fixed, even though payment is not yet due. This principle was involved in United States v. Anderson et al., 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347."

The Board of Tax Appeals has consistently held, and has been supported by the courts in several circuits in holding, that, in order for a salary paid by a corporation to be deductible as an expense incurred during the taxable year, it must have been properly authorized before or during the year for which it is sought to be deducted, and that, where a salary for a prior year is authorized in a subsequent year, it is not an allowable deduction for the prior year. Appeal of William J. Ostheimer, 1 B. T. A. 18.

In Vaughan & Barnes, Inc., v. Commissioner of Internal Revenue, 6 B. T. A. 1279, the Board said:

"If the compensation voted and paid in 1922 was the payment of additional salaries as and for a prior year, without previous authorization therefor, it would not properly be allowable in 1922. The reason is obvious. To hold otherwise would permit a corporation with a large surplus in 1922 to effectually dispose of that surplus by voting salaries over a long series of prior years. No simpler method of evading taxes could be thought of." W. S. Bogle & Co., Inc., et al. v. Commissioner of Internal Revenue (C. C. A.) 26 F.(2d) 771; Adams, Payne & Cleaves, Inc., v. Commissioner of Internal Revenue (C. C. A.) 31 F.(2d) 1006.

The plaintiff has cited, in support of its contention, the case of U. S. v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 134, 70 L. Ed. 347. This case is undoubtedly authority for the proposition that, under the accrual system of accounting, items of expense chargeable to a given year may be accrued upon the books of the business, even though the amounts were not actually paid within that year. But, nevertheless, it must be first determined whether or not they are proper accruals.

The court expressly said in that case, which was a tax case, that:

"It is also true that in advance of the assessment of a tax, all the events may occur which fix the amount of the tax and determine the liability of the taxpayer to pay it. In this respect, for purposes of accounting and of ascertaining true income for a given accounting period, the munitions tax here in question did not stand on any different footing than other accrued expenses appearing on appellee's books."

In the instant case, the salaries here in question do stand on a different footing than other accrued expenses appearing on the plaintiff's books, because no events had occurred to fix the amount and determine the liability of the taxpayer to pay it.

The defendant has argued with considerable force against the reasonableness of the salaries voted one of these officers for each of two years; but, in view of the fact that the deductions are not allowable for the reasons mentioned, I have not thought it necessary to consider the matter of the reasonableness of the amount.

Judgment must be for the defendant, with costs.

### Supplemental Opinion.

'Since the filing on January 24th of my opinion in this case a further brief in behalf of the plaintiff has reached me, an examination of which has not caused me to change my position on the propositions previously discussed.

No decision, however, has been made on the question as to whether the deductions made by the plaintiff for extra salaries represented necessary and reasonable expenses of carrying on its business, and, as it is apparent that the parties desire a ruling on that point, I have given it further consideration.

The statute imposes two requirements: First, that the proposed allowance shall be a necessary expense; and, second, that it shall be reasonable. If the allowance has no substantial relation to the measure of officers' services, and is utterly disproportionate to their value, it is not in reality payment for services, and so cannot be regarded as "ordinary and necessary expenses." Ox Fibre Brush Co. v. Blair (C. C. A.) 32 F.(2d) 42.

The defendant apparently raises no question as to the amounts of the extra salaries voted, except in the case of Henry E. Paige, who, by virtue of votes of the directors at meetings mentioned in the previous opinion,

was given $15,000 for each of the years 1918 and 1919.

The plaintiff is a manufacturer of mechanical cloths, with a factory at Camden, Me. During the time in question, it had a capital of $90,000, all common stock, with a total output of from $400,000 to $600,000 worth of merchandise, employed 100 to 150 men, and paid an 8 per cent. dividend in 1918. The principal person in the corporation, and the managing officer, was the treasurer, Mr. Frank E. Paige, a brother of Mr. Henry E. Paige. The president was Mr. Chester B. Allen, who was such from 1918 up to July 26, 1919, when he was succeeded by Mr. Henry E. Paige, who was paid the money in question. Mr. Allen testified.

It seems he was both president of the corporation and manager of sales, and his salary for both positions during 1918 until he was superseded in 1919 was at the rate of $3,500 per year. The salary of the treasurer, managing officer of the corporation, was at the same rate.

Mr. Henry E. Paige, who was elected president in 1919, had previously, as vice president and director, given only nominal service to the corporation, and had received no salary. The evidence shows that he resided in Massachusetts, was a veterinary surgeon in active practice, an employee of the Bureau of Animal Industry in Massachusetts. The principal service he is claimed to have rendered the corporation is advice to his brother, the treasurer. The former president of the corporation testified that he only met Mr. Henry E. Paige occasionally at directors' meetings and at an occasional conference between him and the treasurer. Neither the treasurer nor Mr. Allen, who was president until July 26, 1919, received any additional compensation for either year. Mr. Henry E. Paige, who performed no active duties, and gave no time to the business, except the advice in consultations with his brother in Boston, was voted $15,000 out of the profits of each year, which, in my opinion, considering the whole picture and the time and service rendered by Mr. Henry E. Paige, did not wholly conform to the rule of being a necessary and reasonable expense. I do not think the allowance can be justified for more than $3,500 per year in any event.

I find that all sums over that amount per annum for the years in question were properly disallowed by the Internal Revenue Bureau.

Judgment is rendered for the defendant, with costs.