### D. H. WATJEN & CO. v. LOUISVILLE TOBACCO WAREHOUSE CO.

(Circuit Court of Appeals, Sixth Circuit. November 17, 1916. Rehearing Denied May 8, 1917.)

#### No. 2745.

1. EXCHANGES ⊸9—CONTRACTS—CONSTRUCTION.
    Though the parties to a sale of tobacco were members of a tobacco exchange prescribing regulations for the sale of tobacco at public auction, they may, if they desire, despite such regulations, make the sale the subject of a special contract.
    [Ed. Note.—For other cases, see Exchanges, Cent. Dig. §§ 12, 13; Dec. Dig. ⊸9.]

2. SALES ⊸271—SALE BY SAMPLE—IMPLIED WARRANTIES.
    Where a sale is by sample, the law implies a warranty that the bulk of the goods is equal in quality to the sample.
    [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 769–771; Dec. Dig. ⊸271.]

3. SALES ⊸445(2)—JURY QUESTION—DIRECTED VERDICT.
    Where a seller of tobacco contended that a sale, though made by sample, was without warranty, because under the rules of a tobacco exchange, and the buyer claimed that the sale was made with warranty, the question whether it was made with or without warranty was for the jury, and

⊸For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

an instruction that as matter of law the sale was governed by the rules of the exchange was error.

[Ed. Note.—For other cases, see Sales, Cent. Dig. § 1304; Dec. Dig. ⟐445(2).]

4. EXCHANGES ⟐9—WARRANTIES—RULES OF EXCHANGE.

Where the rules of a tobacco exchange, of which the ostensible parties to a private sale of tobacco were members, applied only to public sales, and there was no showing of a custom of applying the rules to private sales, it is improper to direct a verdict for the seller on the grounds that, as the rules of the exchange applied, there was no warranty.

[Ed. Note.—For other cases, see Exchanges, Cent. Dig. §§ 12, 13; Dec. Dig. ⟐9.]

5. SALES ⟐437(1)—VARIANCE—EVIDENCE.

In an action by a buyer of tobacco, sold by sample, for damages on the ground that the tobacco was not equal to the sample, breach of warranty was not pleaded in the petition, but an express warranty was set up in the reply to the answer. *Held* that, in the absence of objections, evidence of the express warranty was admissible.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1248–1250; Dec. Dig. ⟐437(1).]

6. SALES ⟐440(2)—ACTIONS—EVIDENCE.

In an action by a buyer of tobacco, who contended that there was an express warranty by the seller, evidence that the seller's representative who effected the sale was a part owner of the tobacco is admissible on the questions of the probability of his giving an express warranty, of whether the parties understood the rules of a tobacco exchange, of which the seller was a member, to govern, and of whether the representative knew of the quality of the packing.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 1262–1265; Dec. Dig. ⟐440(2).]

7. WITNESSES ⟐367(1)—INTEREST—EVIDENCE.

In such case, evidence of the representative's ownership was admissible on the question of his interest as a witness.

[Ed. Note.—For other cases, see Witnesses, Cent. Dig. § 1184; Dec. Dig. ⟐367(1).]

In Error to the District Court of the United States for the Western District of Kentucky; Walter Evans, Judge.

Action by D. H. Watjen & Co. against the Louisville Tobacco Warehouse Company. There was a judgment for defendant, and plaintiff brings error. Reversed and remanded.

The purpose of plaintiffs, aliens and subjects of the Empire of Germany, is to obtain, if possible, a reversal of the adverse judgment rendered below against them on a directed verdict.

The defendant, a Kentucky corporation, is a member of the Louisville Leaf Tobacco Exchange, now known as the Louisville Tobacco Board of Trade, which is empowered by its charter to conduct the business of regulating the storing, warehousing, sampling, selling, and buying of tobacco by its members, the conduct and government of such business and the members of the corporation. One of its declared principal objects is "to protect its members in their dealings with each other, and to defeat the practice of discriminating between customers for charges for selling tobacco, whether by means of any rebate, division of commissions, reduction of fees to the seller of tobacco, or any other device whatsoever; and to effect those objects the said corporation shall have full power by its by-laws to prescribe all the fees and charges for the storage, sale, sampling, or weighing of tobacco; and may in like manner provide for the collection or payment of said fees." A warehouseman who is

⟐For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

a member of the defendant is prohibited from selling tobacco in Louisville to any person who is not a member of the corporation, unless compelled by law to do so; but he may seek purchasers for his tobacco elsewhere by shipment of samples. Warehousemen are prohibited from selling or offering to sell in Louisville or elsewhere any tobacco sampled in Louisville, except on the samples drawn by inspectors elected by the defendant; and no buyer is permitted to sell or offer to sell on the Louisville market any tobacco sampled on that market upon any other samples than those drawn by the defendant's inspectors, unless it be tobacco of such buyers' own packing—the last-named provision as to warehousemen and buyers not being applicable, however, under certain circumstances, as to certain kinds of wrappers. Membership is limited to warehousemen and buyers (tobacco brokers). The by-laws, in so far as need be here noted, provide as follows: If a quorum of the executive committee cannot be obtained at the regular meeting to be held on the first Monday of each month, the meeting shall be held on the succeeding day or days at the hour appointed for commencing sales. The committee on sales shall, when directed by the executive committee, apportion to each warehouseman such a percentage of the total offerings as he may be entitled to offer on any one day. · The committee on quotations is required to furnish for publication weekly quotations of the different grades of tobacco sold in the Louisville market. Four inspectors of tobacco are chosen, each of whom is required to give a $1,000 bond for the faithful discharge of his duties and the prompt payment of reclamations. The committee on reclamations may allow claims on tobacco shipped and for which the inspectors shall be liable and shall decide according to sufficiency of proof of damage, the inspectors and their sureties to be jointly liable for reclamations. If damages are awarded to a claimant, the inspectors and owners of tobacco are required to pay, in addition thereto, $1.00 for each hogshead of tobacco placed on reclamation. The inspectors are required to attend daily each warehouse a sufficient time before the sale of tobacco commences to inspect each hogshead and to take fair and true samples therefrom. No hogshead can be sampled by other than the regular inspectors, their assistants or alternates. In sales made by warehousemen, members of the exchange, on samples drawn by its inspectors, it is understood that the inspectors, and not the warehousemen, are responsible for the correctness of the samples. The by-law thus providing is required to be posted in a conspicuous place in the salesroom of every warehouseman who is a member of the defendant corporation. Sales of tobacco are to begin promptly at 9 o'clock a. m. The time consumed in selling tobacco shall not exceed one minute to a hogshead, and the time between each house from the end of one sale to the beginning of the next shall not exceed five minutes. The minimum bid on tobacco is specified, and by-bidding is not allowed under penalty of expulsion. If the owner rejects one hogshead or more of several bought of the same buyer, the buyer is given the right, to be exercised within two hours after receiving notice of rejection, to reject an equal number, unless the owner accepts or rejects each hogshead at the time it is knocked down. When a hogshead is rejected, the purchaser is to be notified in two hours from the close of the sale at which the hogshead was purchased, or the right of rejection is forfeited. Every firm of warehousemen, members of the defendant exchange, has the privilege of holding daily sales at their warehouse or warehouses, provided they designate one place of business where they intend to hold such daily sales; and no firm of warehousemen enjoys the privilege of selling in regular rotation at any other place than the one so designated by them, unless the other locality adjoins the place designated by them without the intervention of any other warehouse belonging to or rented by another firm of warehousemen, and where daily sales in regular rotation may be allowed to be held under the rules. Any sales held at other places than the one designated for regular rotation sales are considered as extra sales and must take place after the regular rotation sales of the day are exhausted, beginning after the sale at the last warehouse selling that day in regular rotation and then following the same circle as the rotation sale.

Plaintiffs, through their agents, De Ridder & Griffith, who were experienced tobacco buyers or brokers and who had long been members of the defendant corporation, and as such familiar with its charter and by-laws, bought 322

hogsheads of French tobacco of defendant through its manager, samples of which, according to defendant's representation, had been previously taken from such hogsheads by inspectors, as understood both by the brokers and defendant; one sample being drawn from each hogshead. Payment in full was made for the tobacco. On the inspection of the tobacco in New York, to which place it was shipped, 77 hogsheads were rejected as worthless and returned to the defendant on the ground that the tobacco in them was so inferior in condition, quality, kind, and nature, to the samples by which the hogsheads were respectively sold; as to be unfit for use. The remaining 245 hogsheads, although inferior, as claimed by plaintiffs, to the samples taken from them, were retained and used, but at a loss. The plaintiffs sought to recover the purchase price of and the freight paid on the tobacco returned, and also the damage sustained on that which was retained and used. The 77 hogsheads which were returned to defendant were resampled at Louisville before the trial by six experienced tobacco men. Plaintiffs gave evidence that their agents at the time of the purchase did not see the hogsheads purchased, but samples only; that the samples taken in plaintiffs' behalf in New York and Louisville from the 77 rejected hogsheads were in appearance and quality greatly different from and inferior to those with reference to which such hogsheads were purchased, so much so that the last-named samples could not have come from such hogsheads; that the samples taken at the plaintiffs' instance from the remaining 245 packages showed the tobacco in them to be greatly and materially different in quality from that indicated by the selling samples exhibited by defendant's manager, one witness, however, stating that the tobacco in 9 of such packages, although differing in kind, was not inferior to that shown by the samples; that, at the time of the purchase, a price was separately affixed to each sample; that the defendant represented the samples and packing to be good and the tobacco in the hogsheads to be according to the samples purported to have been drawn from them respectively, and further guaranteed the tobacco to be well packed and as good as the samples; and that the plaintiffs' agents bought the tobacco, supposing the hogsheads were absolutely as represented by such samples. The defendant offered evidence to show that it acted in the transaction merely as a commission merchant; that its representative stated to plaintiffs' agents that he thought the packing was all right. although he says he did not of his own knowledge know such to be the fact; that he did not say that the samples represented or fairly represented the tobacco contained in the hogsheads, or guarantee the tobacco; that the tobacco was bought at private sale and was all sold by samples; that each sample was separately examined and the price was agreed upon before the sale was consummated; and that it had no authority to sell tobacco except under the rules of the exchange. The defendant's only witness on the comparison of samples examined only about 25 or 30 of those taken by the plaintiffs. Some of them indicated to him no difference in value from those shown at the time of the sale; others indicated a difference of from 50 cents to $1.00 per hundred. The inspectors were not able to give an independent recollection of their sampling the 322 hogsheads, but the usual required daily record kept by them shows each of such hogsheads to have been sampled. They testified as to their mode of sampling and that their endeavor was to get a fair sample from each package.

At the conclusion of the evidence the court directed a verdict for the defendant.

Wm. Marshall Bullitt, of Louisville, Ky., for plaintiff in error.

E. P. Humphrey, of Louisville, Ky., for defendant in error.

Before KNAPPEN and DENISON, Circuit Judges, and SATER, District Judge.

SATER, District Judge (after stating the facts as above). The trial court, in denying plaintiffs' right to relief, held that the transaction in question is governed by the by-laws of the defendant. The view was expressed that De Ridder & Griffith, plaintiffs' agents, being members of the defendant, and having had a voice in the selection of

inspectors for settling by samples the condition and quality of the hogsheads of tobacco, are bound by the acts of such inspectors as regards the inspection and sampling of such hogsheads, and that plaintiffs, as undisclosed principals, are in no better position than their agents; that the defendant cannot be said to have sold the tobacco by samples in the ordinary sense of that phrase, but to have sold it by samples to which De Ridder & Griffith had consented as between themselves and the defendant; that the samples were guaranteed by the inspectors only, although De Ridder & Griffith might be regarded in a way as buying by sample as between themselves and the inspectors; and that the defendant did not guarantee or intend to guarantee the samples, and that De Ridder & Griffith so understood.

[1-4] The sale made to plaintiffs was private and not at public auction. If the rules of the defendant are applicable to private sales, the parties could, nevertheless, conduct their transaction, if they so desired, in disregard of them, and make the sale the subject of a special contract. The plaintiffs' evidence tends to show that they did this. The uncontradicted evidence is that the sale was by samples, and, being so, the law implied a warranty that the bulk of the goods were equal in quality to such samples. Dickinson v. Gay, 7 Allen, 29, 31, 83 Am. Dec. 656; The Monte Allegre, 9 Wheat. 616, 644, 6 L. Ed. 174; 35 Cyc. 405. The contention of the defendant, which was adopted by the trial court, is that the sale was made under its rules (which were put in evidence), and that the warranty was by the inspectors only, the defendant's manager denying that he warranted either the samples or the tobacco. There is, however, substantial evidence that plaintiffs did not contract with reference to the defendant's rules or rely on the samples as indicating the kind and quality of the tobacco in the packages from which it is alleged they were respectively drawn, but solicited and relied on the express warranty by defendant's agent of both the samples and the correspondence of the tobacco sold with such samples. But a warranty by the seller is inconsistent with defendant's rules. If such rules are applicable to private sales, then, in view of the defendant's evidence that it acted under them, there was presented a question of fact as to whether it gave a warranty and as to whether its rules controlled the transaction under consideration, and, as the evidence was conflicting, the determination of both those questions was for the jury. The court's instruction, therefore, that the defendant gave no warranty to the plaintiffs and that, as a matter of law, the sale was governed by defendant's rules, was error. A more cogent reason for holding such instruction erroneous rests on the obvious fact that defendant's rules are restricted in their operation to sales at public auction and have no application to those privately conducted. The importance of the evidence touching a warranty by the defendant thus becomes apparent. The record, it may be noted, does not show the prevalence, among defendant's members, of a custom of applying its rules to private sales, or of submitting, in the making of them, to the judgment of defendant's inspectors, as regards samples, or that the plaintiffs had knowledge of such special or local custom, if it existed. Had proof of such a custom been offered, questions not presented would be for consideration.

[5] The evidence as to an express warranty is made competent by the concluding sentence of the second paragraph of the reply, which is in avoidance of the defense made in the answer. Technically, the breach of warranty should have been affirmatively pleaded in the petition, but no attack was made on the plaintiffs' pleading. There was, moreover, no objection made to the introduction of such evidence. If the question of variance should be raised at a rehearing, an amendment to meet the proofs would doubtless be permitted.

[6, 7] The evidence offered by the plaintiffs to show that the defendant's representative, who effected the sale of the tobacco, was, as part owner, personally interested in a portion of the tobacco sold, is competent and should have been admitted. It reflects on his interest as a witness, on the probabilities of his giving a guaranty, on the question of whether the parties understood the defendant's rules to govern, and as to whether he actually knew about the quality of the packing.

Other questions presented by the record need not now be decided. It is, of course, understood that the present opinion is based on the record admitted. . Should a rehearing develop new evidence, the court and counsel, it is believed, will be able to meet the new situation thus arising.

The judgment is reversed, and the cause remanded for further action by the trial court.