**WATJEN et al. v. LOUISVILLE TOBACCO WAREHOUSE CO.**

Circuit Court of Appeals, Sixth Circuit. December 18, 1928.

No. 5108.

Hickenlooper, District Judge, dissenting in part.

Wm. Marshall Bullitt, of Louisville, Ky. (R. Lee Blackwell and Bruce & Bullitt, all of Louisville, Ky., on the brief), for plaintiffs in error.

Charles W. Milner, of Louisville, Ky. (Edward P. Humphrey and Humphrey, Crawford & Middleton, all of Louisville, Ky., on the brief), for defendant in error.

Before DENISON and HICKS, Circuit Judges, and HICKENLOOPER, District Judge.

HICKS, Circuit Judge. This case is here for the third time. Watjen & Co. v. Louisville Tobacco Warehouse Co., 240 F. 919; D. H. Watjen & Co. v. Louisville Tobacco Warehouse Co., 294 F. 264. The suit is one for damages for alleged breach of a contract. So far as is material here, it relates to 245 hogsheads of tobacco. Plaintiffs in error insist that defendant in error sold them this tobacco by sample, but delivered inferior tobacco. The recovery sought is for the difference in value between the tobacco sold and that delivered. The facts are substantially stated in the opinion in 240 F. at page 920.

Upon the eighth and last trial the jury found the following verdict:

"We, the jury, agree * * * and on the 245 hogsheads we find for the plaintiffs in the sum of $1,000.00 without interest."

Judgment was entered upon this verdict.

Plaintiffs in error insist that this verdict and judgment was erroneous, in that, as an undisputed fact, the record establishes their damages in the sum of $5,960.34. The insistence is that this error was caused by certain instructions of the court leaving to the jury discretion in the assessment of damages. This insistence is fairly preserved in the first assignment of error and subdivisions 1, 3, and 4 thereof. The instructions complained of are as follows:

"You will award plaintiffs such a sum as you may believe from the evidence fairly represents the difference, if any, between what would have been the fair market value in Louisville of said 245 hogsheads had they been equal to the samples by which they were sold as of date of their delivery, and the fair market value in Louisville of the tobacco actually contained in said hogsheads as of the date of their delivery, not to exceed in all, however, the sum of $5,960.34." * * * "In determining what would have been the fair market value of the tobacco contained in said 245 hogsheads had it been equal to the samples by which it was sold, you have a right to take into consideration the price paid for same by the plaintiffs, although this in and of itself is not conclusive upon you."

"4. The Court erred in charging the jury as follows: 'In determining what was the fair market value of the tobacco actually delivered and contained in the 245 hogsheads as of date of delivery you should take into consideration the testimony of the witnesses as to what was the market value in Louisville, Kentucky, on the day of delivery of tobacco of the type, quality and condition represented by what is known in the evidence as the "Jarvis" samples,' without at

the same time telling the jury that there was no other evidence before them as to such market value."

■ Three impartial and experienced tobacco men testified for plaintiffs in error on the matter of values. They carefully examined 245 samples by which this tobacco was sold and known in the record as the "Exchange" samples and the 245 samples taken from the hogsheads of tobacco actually delivered and known herein as the "Jarvis" samples, and compared these samples each with the other according to the corresponding serial numbers thereon, and filed a carefully tabulated report showing a "falling off" or difference in value between the 245 hogsheads sold and the 245 hogsheads delivered of $5,960.34. This was their joint and common action and judgment made up and reported as if by a valuation or appraisal board. This was substantially all the testimony on the subject of values, except a brief statement by the witness Luckett, as follows:

"The 245 original samples were short, common leaf of good color and condition, sweet, whereas the 'Jarvis' samples represented inferior tobacco, inferior in quality and condition, being lugs and trash, and badly sweated, funked. When we made the comparison, we went over each one separately and made an estimate of the difference in value per pound and per hogshead between the two samples."

■ These witnesses were not cross-examined. Neither their competency nor integrity was attacked. Their credibility was not questioned, and no color, bias, prejudice, or self-interest appears in their testimony. There was no independent, countervailing testimony and no substantive evidence legitimately supporting the verdict in the particular amount of $1,000. However, defendant in error takes the view that the testimony of plaintiff in error's witnesses is expert or opinion evidence by which under familiar rules the jury was not necessarily bound, and that the subject-matter of this evidence was of common knowledge upon which the jury might exercise its independent judgment based upon its own experience. Defendant in error relies upon such cases as The Conqueror, 166 U. S. 110, 17 S. Ct. 510, 41 L. Ed. 937. This involves at least two considerations: First, was plaintiffs' evidence expert or opinion evidence? And, second, if so, did the subject-matter thereof embrace matters of common knowledge? The type, quality, and condition of tobacco is of course to be determined from the opinions of men experienced in the tobacco business, but such

opinions necessarily shade into knowledge, as nearly as this is possible in the nature of things. Such is peculiarly true here, where the testimony of the experienced witnesses was based, not upon conditions of the tobacco as reported by others, but upon knowledge arrived at by a personal inspection of the tobacco samples. Market value at any given place or time is not a matter of opinion. McNamara v. Georgia Cotton Co., 10 Ga. App. 669, 73 S. E. 1092. It is a matter of personal knowledge to be proven by men who out of their experience had become acquainted with the facts. Assuming that the plaintiffs' evidence as to the type and quality of the tobaccos bought as well as of the tobaccos delivered has in it somewhat of the element of opinion which a jury might disregard, it does not necessarily follow that the subject of such opinion is a matter of such common knowledge as to justify the assumption that the jury could safely base a conclusion of its own thereon. It is indeed difficult to justify the verdict here upon any such idea as that the jury could know for itself the type and quality of the tobaccos in question based upon the meager description of their condition in the record, and that, in addition thereto, it could out of its own experience know the market value thereof in Louisville, Ky., on August 12, 1913, the date of the contract, some 14 years before the trial. To state the proposition seems to destroy it, and certainly there was no legitimate foundation for any recovery in the particular amount of $1,000. The jury never saw the "Exchange" tobacco —it had been shipped to France. It never saw the "Jarvis" samples as a whole. A few only of the samples of each class were exhibited upon the trial, and this only for illustrative purposes. It does not appear that the jury personally examined any of the samples. The jury was not selected by reason of any particular skill or knowledge in the tobacco business as is permitted in some jurisdictions. A verdict upon such unsubstantial basis goes far beyond the "scintilla of evidence" rule long since repudiated in the federal courts. To recapitulate: The unchallenged evidence of the tobacco experts was a mixture of fact evidence and opinion evidence rather inseparably mingled; if it were to be considered as subject to the infirmity of opinion evidence in that a jury might be skeptical to the extent covered by common knowledge and experience, yet it would be difficult to attribute to this jury or to the community generally the existence of a safely discriminatory judgment about the distinctions and shadings of tobacco grades;

and, if this difficulty also could be passed by, yet it will be clear that both parties acquiesced in not putting before the jury the opposing tobacco samples in such a way as to make any basis for the jury to form its independent judgment, but rather joined in leaving the finding or report of the experts substantially undisputed. We conceive that the situation called for a clear-cut statement to the jury that, in the event of a recovery, the amount of damages had been placed beyond dispute, and that the instructions complained of leaving the amount of recovery to the unguarded discretion of the jury were prejudicial. The injury is reflected in the verdict for $1,000, for which can be found no legitimate foundation. Hence the judgment is reversed upon this ground.

■ Error is predicated upon that portion of the court's charge to the jury as follows, to wit:

"And *you may in your discretion* provide in your verdict that this latter sum (the sum found as to the 245 hogsheads) shall draw interest from August 12, 1913, until paid."

Plaintiffs in error insist that they were entitled to interest as a matter of law, and that the jury should have been specifically instructed to return a verdict therefor. The general rule is that interest is not allowed on a recovery for unliquidated damages except in the discretion of the jury. The trouble arises in determining just what constitutes unliquidated damages. They have been declared to be such damages as are uncertain and unascertainable by computation at the time of the commencement of the action. Stephens v. Phœnix Bridge Co., 139 F. 248, 250 (C. C. A. 2); Robertson v. Miller, 286 F. 503, 510 (C. C. A. 2). The more modern judicial opinions reflect greater liberality in allowing interest by way of damages than earlier cases, and, if it should appear that the defendant, at the time the cause of action accrued, could have determined, in case of a recovery against him, just the amount due by computation in connection with market values, then interest is allowable—but something more is involved here than computation and market values. Before a recovery could be had at all, it was necessary to determine the type, quality, and condition of each lot of tobaccos. This was necessary before a basis could be had for computation, and was, of course, unascertainable until the verdict of the jury passed upon the evidence adduced. See Boston Sand & Gravel Co. v. United States, 49 S. Ct. 52, 73 L. Ed. ——, opinion by Mr. Justice Holmes, November 19, 1928.

The record contains no error in this particular.

■ Defendant in error has entered a motion to strike the bill of exceptions upon the ground that it was filed too late. This motion is overruled.

The judgment was entered September 26, 1927. On October 6, 1927, an order was entered extending the time for filing the bill of exceptions until December 1st. The term closed October 10th. On November 25th an order was entered extending the time for filing the bill of exceptions until January 15, 1928. On January 14, 1928, an order was entered extending the time for filing the bill of exceptions until February 15th, and the bill of exceptions was actually filed February 10th. It thus appears that the first extension was made within the trial term, and that each subsequent extension was made within the period of the prior extension, and that the bill of exceptions was filed within the last extension. It was therefore filed in time, under the authority of Camden Iron Works v. Sater, 223 F. 613 (C. C. A. 6); Cudahy Packing Co. v. City of Omaha, 24 F.(2d) 4 (C. C. A. 8); Vaughan v. American Ins. Co., 15 F.(2d) 526 (C. C. A. 5); Stickel v. United States (C. C. A.) 294 F. 808; Sunderland v. United States (C. C. A.) 294 F. 811. The case of Exporters of Manufacturers' Products, Inc., v. Butterworth-Judson Co., 258 U. S. 365, 42 S. Ct. 331, 66 L. Ed. 663, in support of the motion to strike, is not in point. In that case the term closed before any order of extension was entered. The court said: "We think the better rule and the one supported by former opinions of this court requires that bills of exceptions shall be signed before the trial court loses jurisdiction of the cause by expiration of the term, or such time thereafter as may have been duly prescribed."

The judgment is reversed, and the case remanded for further proceedings.

HICKENLOOPER, District Judge. I concur in the result, but, in so far as the opinion seems to indicate, as it does to me, that the opinions of experts, employed by plaintiff to fix an alleged difference in value between tobaccos as represented by different samples, is other than pure opinion evidence or is binding upon the jury as shading into fact evidence, I cannot concur. No definite and established grades are fixed for tobacco. No market prices as if for such sample grades were proved. The samples purported to have been separately taken by plaintiff

and defendant. To hold that this opinion evidence is binding upon, and must be accepted by, the jury unquestioningly (if this be the purport of the opinion), both upon the issue of whether a hogshead of tobacco is susceptible to sampling with certainty of true representation of the whole, and as to a difference in value as between tobaccos of different samples, is to usurp the function of the jury where these issues remain contested at the trial. While so contested, it is within the proper function of the jury to accept or reject the evidence offered by plaintiff or to attribute to it such weight only as the jury deems it entitled to receive. No specialized knowledge or common experience of the jurors is necessary for the exercise of this function.

I concur in the result because upon the present record and in this particular case the facts that the "Jarvis" samples truly represented the whole and that the "Exchange" samples were falsely, if not fraudulently, taken, and the extent of difference in value, are practically conceded, or so conclusively shown as to entitle plaintiffs to a direction in their favor. Small Co. v. Lamborn & Co., 267 U. S. 248, 254, 45 S. Ct. 300, 69 L. Ed. 597. The issue upon these facts was no longer contested.

Upon this position here taken, it was also proper to leave the question of interest to the discretion of the jury for the all-sufficient reason that, until the trial had closed, and not before, the damages were wholly unliquidated.

If the opinion of the court means no more than the foregoing, no harm is done by this expression of concurrence.