## TOLEDO GRAIN & MILLING CO. v. COMMISSIONER OF INTERNAL REVENUE.
### No. 6054.

Circuit Court of Appeals. Sixth Circuit.
Dec. 16, 1932.

George R. Effler, of Toledo, Ohio (John J. Kendrick, of Toledo, Ohio, on the brief), for petitioner.

S. Dee Hanson, of Washington, D. C. (G. A. Youngquist, Asst. Atty. Gen., Sewall Key, C. M. Charest, and Hartford Allen, all of Washington, D. C., on the brief), for respondent.

Before MOORMAN, HICKS, and HICKENLOOPER, Circuit Judges.

HICKS, Circuit Judge.

Petition by Toledo Grain & Milling Company, a corporation, to review decisions of the Board of Tax Appeals affirming the action of the Commissioner of Internal Revenue in assessing, on redetermination, deficiencies in income taxes against it in the sums of $1,450.00, $275.17, $2,516.79, $829.89, $1,812.50 and $2,016.01 for the years 1920, 1921, 1922, 1923, 1924, and 1926 respectively.

Petitioner has for many years been engaged in the manufacture and sale of flour and feed with its principal place of business at Toledo. In 1918 its directors were E. L. Camp, D. W. Camp, Jr., Lyda D. Trost, brothers and sister, Mrs. G. L. Camp, their mother, and J. D. Hurlbut, husband of Mrs. Hurlbut, a sister of E. L. and D. W. Camp, Jr., and Mrs. Trost.

E. L. Camp became its president in 1917, with a salary of $7,000 per year. D. W. Camp, Jr., was its vice president and general sales manager, and was paid by commissions from 1911 until 1918, which commissions averaged $14,104.58 per year. At a meeting of the board of directors on November 14, 1918, a resolution was unanimously passed raising the salaries of E. L. Camp and D. W. Camp, Jr., to $1,000 per month.

On April 4, 1919, the same board of directors passed a resolution fixing the salaries of E. L. Camp and D. W. Camp, Jr., at $15,000 each per year. E. L. Camp received this salary from 1920 to 1926, inclusive, and D.

W. Camp, Jr., likewise until his death in 1925.

In each of the years in question petitioner deducted these salaries in computing its net income. The Commissioner disallowed $5,500 of the salary of E. L. Camp for each year, and $9,000 of the salary of D. W. Camp, Jr., for the years 1920 to 1924, inclusive, and $8,250 for the year 1925. The alleged deficiencies resulted from these disallowances. The disallowances for the years 1922 and 1923 were made upon the ground that to that extent the salaries represented distribution of profits rather than compensation. Disallowances for other years were made upon the ground that the excess in salaries was not warranted by existing conditions.

The Board upheld the Commissioner solely upon the ground that petitioner had failed to sustain its burden of establishing that the salaries were reasonable, and therefore allowable, as deductions by the provisions of the Revenue Act of 1918, c. 18, § 234 (a) (1), 40 Stat. 1057, 1077, and the corresponding sections of the Revenue Act of 1921 (chapter 136, § 234 (a) (1), 42 Stat. 227, 254) and Revenue Act 1926 (chapter 27, § 234 (a) (1), 44 Stat. 9, 41 (26 USCA § 986 (a) (1).

We are not in accord with the Board's conclusions, and we think that "the evidence clearly and convincingly requires a contrary conclusion." Tracy v. Com'r, 53 F.(2d) 575, 579 (C. C. A. 6); Atlas Plaster & Fuel Co. v. Com'r, 55 F.(2d) 802, 803 (C. C. A. 6).

The resolution of the Board of Directors of April 4, 1919, creates the inference that the salary allowances were reasonable. Ox Fibre Brush Co. v. Blair, 32 F.(2d) 42, 45, 68 A. L. R. 696 (C. C. A. 4). The resolution seems to have been passed in good faith. The undisputed evidence bears out the inference that the salaries voted were reasonable. In the year 1919 the monthly volume of petitioner's business was $170,000, and its invested capital was about $670,000. The gross sales for 1925 were $1,508,407.35. The volume of business for the intervening years was not specifically disclosed, but we cannot assume that, if it were materially less, the directors would have continued to allow salaries at an excessive figure. In addition to certain other income for 1925, petitioner's gross profits for manufacturing and selling were $203,559.86. At the beginning of the year 1925 its undivided profits were $446,872.46, and at the close of the year they were $434,567.63. Petitioner paid a dividend in 1919 of 20 per cent.; in 1921 of 10 per cent.; and in 1922 and 1923 of 25 per cent.

Petitioner introduced before the Board the evidence of Jesse D. Hurlbut, who had been its secretary and treasurer since 1917. He was of course familiar with its affairs. He testified that the salaries paid to E. L. Camp and D. W. Camp, Jr., during the years involved were, in his opinion, reasonable and fair. He further testified that E. L. Camp, as president and general manager, was the chief executive, having supervision over all departments, such as the buying and selling; that he "supervised the buying of grain on the grain exchange, in a cash way from the cash tables, through the future markets, from country elevators, and through the five country elevators owned and operated by petitioner"; that "D. W. Camp, Jr. as travelling sales manager of the company looked after all outside business east of Toledo as far as the Atlantic Coast, taking in the New England States and traveling as far as Florida and that he had been engaged in that particular field for petitioner since 1909." The force of his evidence was not shaken by cross-examination.

Petitioner also introduced Kenton Keilholtz, who testified that he had been a member of the Toledo Produce Exchange for twenty-eight years; that he had been president of it for four terms; that he was the senior partner of the oldest grain house in Toledo; that he had known E. L. Camp for twenty-two years; that E. L. Camp was for a number of years a director on the exchange, and was president thereof for one term; was a director in the Toledo Chamber of Commerce and a member of the Chicago Board of Trade; that he knew of the management of petitioner's affairs under E. L. Camp. In these particulars he corroborated the testimony of Hurlbut. He further testified that other companies similar in character and size were for the years 1920 to 1926, inclusive, paying their presidents and general managers salaries ranging from $10,000 to $25,000 a year, and that in his opinion a salary to E. L. Camp of $15,000 per year was very reasonable, and that a salary of $9,500 a year for the years in question was "too low." He sustained the testimony of Hurlbut as to the reputation and character of D. W. Camp, Jr., as a sales executive, and further testified that companies engaged in a business similar in character and size to that of petitioner were paying their sales executives salaries from $10,000 to $25,000 for the years 1920 to 1926, and that a salary to D. W. Camp, Jr., of $15,000 for those years was reasonable, and that a salary of $6,000 a year for the same years was "too low."

Petitioner also introduced Edgar W. Thierwechter, who testified that he was president of the Ohio Millers' Association for two years and a member of the Toledo Produce Exchange; that he had been engaged for twenty-two years in the manufacture and sale of flour and feeds; that he was connected with the Emory-Thierwechter Company, a competitor of petitioner; that petitioner was the third largest milling concern in the Toledo district and the largest producer in that district of flour and feed; that he knew D. W. Camp, Jr., during the years 1920 to 1926; that he knew his reputation as a sales executive; that he was a competent sales manager; that petitioner's production for those years was approximately three hundred barrels per day; that other concerns were paying their sales managers a commission of from 15 cents to 20 cents per barrel; that a salary for D. W. Camp, Jr., for the years 1920 to 1926 of $15,000 per annum was reasonable; and that a salary of $6,000 per year for the same years was in his opinion "most unreasonable."

The witnesses Keilholtz and Thierwechter were not cross-examined. The credibility, competency, and integrity of Hurlbut, Keilholtz, and Thierwechter were not questioned. No color, bias, prejudice, or self-interest appears in their testimony. Respondent presented no countervailing evidence. The testimony of these three witnesses was an intermixture of fact and opinion evidence. It was uncontradicted.

It is urged upon us, upon the authority of our opinion in Tracy v. Com'r, 53 F.(2d) 575, 577, that, in so far as the testimony of these witnesses was an expression of an opinion upon the reasonableness of the salaries allowed the Board was not bound to follow it. But the principle is not determinative here. If we lay aside all the opinion evidence, we think the remaining fact evidence clearly tended to show that the salaries allowed by the Board of Directors were reasonable and overcame any contrary presumption arising from the decision of the Commissioner. This evidence remained unchallenged by substantial "contrary proofs or by destructive analysis," and we think it should have been accepted. Rookwood Pottery Co. v. Com'r, 45 F.(2d) 43, 45 (C. C. A. 6); Pioneer Pole & Shaft Co. v. Com'r, 55 F.(2d) 861, 862 (C. C. A. 6); Grand Rapids Store Equipment Corp. v. Com'r, 59 F.(2d) 914 (C. C. A. 6).

It was conceded by the Board that, if we should conclude that the salaries in question were reasonable, the net loss suffered by petitioner in the year 1925 was a proper deduc-

tion from petitioner's profits for the year 1926, and the second assignment of error upon the Board's holding to the contrary is therefore sustained.

For the reasons and upon the grounds indicated, the decision of the Board of Tax Appeals is reversed.