## CAPITOL–BARG DRY CLEANING CO. v. COMMISSIONER OF INTERNAL REVENUE.

### No. 9114.

Circuit Court of Appeals, Sixth Circuit.

Dec. 2, 1942.

Robert S. Marx, of Cincinnati, Ohio (Robert S. Marx, Frank E. Wood, Milton H. Schmidt, and Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for petitioner.

Arthur Manella, Spec. Asst. to Atty. Gen. (Samuel O. Clark, Jr., Asst. Atty. Gen., and Sewall Key and Arthur Manella, Spec. Assts. to Atty. Gen., on the brief), for respondent.

Before HICKS, SIMONS, and AL-LEN, Circuit Judges.

HICKS, Circuit Judge.

Petition by the Capitol-Barg Dry Cleaning Company, a corporation, to review a decision of the Board of Tax Appeals determining a deficiency in the income tax of petitioner for the year 1937 in the amount of $2,283.97. The alleged deficiency resulted from the disallowance by the Board of $9,010 of compensation paid to William F. Hummel, secretary and general manager, and to J. D. Shanman, assistant secretary and manager of the retail department of petitioner.

In 1920 Louis E. Block and William F. Hummel, experienced and capable dry cleaners, organized the corporation, which has since been engaged in the dry cleaning business. Shortly after its organization Block died and his widow, Rose Block, a competent and efficient woman, became president of the company.

After Block's death Hummel managed the business, assisted by Mrs. Block. In 1930 Mrs. Block married Hummel but remained actively in the business.

From its organization until 1934, petitioner devoted its activities almost exclusively to the wholesale field, and prior to 1937, it had become the largest wholesale dry cleaning establishment in Ohio. J. D. Shanman, son-in-law of Mrs. Hummel, came into the business in 1934, and after serving an apprenticeship, organized a retail division in the subsequent year, to which he primarily devoted himself and which was developed until, in 1937, petitioner did a gross retail business of over $83,000.

In 1936, the company began specialty work which involved the cleaning of carpets, industrial wiping cloths, and of athletic goods, and servicing of clothing manufacturers and stores by cleaning garments soiled on display. In 1937, its plant covered approximately an acre of ground and employed from 150 to 165 workers. It had more than 300 wholesale and several thousand retail customers.

In 1937, petitioner had 1470 shares of outstanding capital stock. Of these, Mrs. Hummel, president and treasurer, owned 1017 shares; Wm. F. Hummel, 150 shares; Shanman, 3 shares, and Anna Bernstein, a sister of Mrs. Hummel, 300 shares. Hummel and wife, Shanman, Anna Bernstein and Emma Hummel constituted the board of directors. The executive management was in the hands of the Hummels and Shanman. Their duties were divided.

Hummel was the directing head and had general supervision especially of the wholesale division. He promoted and developed the wholesale business and saw that it was properly and expeditiously handled. He employed labor, kept a close watch over the various departments and did a large

part of the buying of materials and supplies.

Shanman, as hereinbefore indicated, was in charge of the retail division which he had developed from nothing. He also had charge of advertising and publicity, including radio and newspaper programs. In addition he had general supervision of the bookkeeping.

Mrs. Hummel co-operated with Hummel in hiring and discharging employees. She handled complaints and made adjustments and assisted in determining all financial policies.

In 1937 petitioner had a very substantial increase in its business. Its total sales increased by $50,000, or more than 20% and the percentage of gross profit to sales increased from 32% in 1936, to 41% in 1937. The net income after deduction of salaries and profit-sharing payments to the executive officers had increased more than four times in 1937, as compared with 1936. The income tax was more than six times greater in 1937, than in 1936. The total volume of sales in 1937 was higher than for any year since 1926. The net sales, gross profit and net profit for 1935, 1936 and 1937 are tabulated as follows:

"1935

| | |
|---|---|
| Net Sales | $243,243.20 |
| Gross Profits | 85,791.16 |
| Net Profits | 8,868.52 |

1936

| | |
|---|---|
| Net Sales | $273,906.20 |
| Gross Profits | 87,944.25 |
| Net Profits | 3,365.09 |

1937

| | |
|---|---|
| Net Sales | $329,757.91 |
| Gross Profits | 133,382.88 |
| Net Profits | 14,654.82" |

This splendid financial position was achieved notwithstanding lower prices than in previous years and was outstanding among dry cleaning concerns, many of which had failed or were on the verge of bankruptcy.

On January 6, 1936, petitioner's board of directors by resolution adopted a policy of distributing its net profits, 33⅓% each to stockholders, employees and the management. As a result, petitioner never had any work stoppages or other labor troubles.

On November 30, 1936, the board by resolution, increased the salaries for 1937 and succeeding years, of Hummel, secretary and general manager, from $12,000 to $16,000, and of Shanman assistant secretary and general manager, from $3,500 to $7,500.

In 1937 the compensation actually received by these officers was as follows:

"William F. Hummel,
basic salary .......... $16,000.00
William F. Hummel,
bonus ................. 7,840.00 Total $23,840.00
Jerome D. Shanman,
basic salary .......... 7,500.00
Jerome D. Shanman,
bonus ................. 3,920.00 Total $11,420.00"

Petitioner introduced E. K. Wuerdeman as a witness. He was president and treasurer of Fenton United Cleaning & Dyeing Company, the largest retail dry cleaning concern in Cincinnati. He had been in the business for 28 years and was familiar in a general way with petitioner's business and with the ability of Hummel and Shanman in that field; he testified that they were progressive and exceptionally competent, considering the general condition in the industry, which had not been too healthy in 1936, 1937 and 1938, and that the compensation paid to them in 1937 was fair and not out of line if they made plenty of money.

Petitioner also introduced Victor S. Keys as a witness. He was the executive secretary of the Ohio State Association of dyers and cleaners. He testified that he was familiar in a general way with the operations of petitioner; that he visited their plant between three to five times a year; that he was acquainted with its operating officials; that the business was very efficiently managed and unusual in that it conducted a retail, wholesale and specialized business; that the plant was a model one and that the salaries paid to Hummel and Shanman, based on their records of management, were both fair and reasonable.

Both of these witnesses stated that Shanman had developed into a very capable and successful manager. Both approved petitioner's method of profit-sharing as good business policy.

Respondent introduced no evidence except an agreed compilation of gross sales and the compensation of its officers and dividends from 1926 to 1937 inclusive.

The Commissioner allowed compensation, including bonus, to Hummel and Shanman in the amounts of $15,000 and $4,375 respectively. The Board allowed them compensation, including bonus, in the amounts of $17,500 and $8,750 respectively.

The statute involved is the Revenue Act of 1936, Ch. 690, Sec. 23(a), 49 Stat. 1648,

26 U.S.C.A. Int.Rev.Code, § 23(a), and Article 23(a) 6, promulgated under the Revenue Act of 1936 is applicable. These provide that in computing its net income petitioner shall be allowed as deductions a reasonable allowance for salaries or other compensation for personal services actually rendered.

Our question is, whether the decision of the Board was in accordance with law. Internal Revenue Code, Title 26, U.S.C.A. § 1141(c) (1).

The facts, apart from opinion evidence, are uncontroverted and as indicated in the memorandum opinion of the Board, were fully accepted by it. But the Board did not give full faith and credit to the resolution of November 30, 1936, by which the claimed allowances were authorized. This resolution created the inference that the salary allowances were reasonable. Toledo Grain & Milling Co. v. Com'r, 6 Cir., 62 F.2d 171, 172; Ox Fibre Brush Co. v. Blair, 4 Cir., 32 F.2d 42, 45, 68 A.L. R. 696. Perhaps the Board was justified in looking askance at this resolution because of the family relationship between the members of the Board and the officers involved. However, the testimony of Wuerdeman and Keys must be viewed in a different light. Their competency was not questioned. Their integrity was not attacked. They were not discredited in any manner known to the law and no color, bias, prejudice or self-interest appears in their testimony. Their testimony was unimpeached and should have been accepted by the Board in a matter in which the Board itself had no knowledge or experience upon which it could exercise an independent judgment. Watjen v. Louisville Tob. Warehouse Co., 6 Cir., 29 F.2d 801, 802; Toledo Grain & Milling Co. v. Com'r, supra, 62 F.2d at page 173; Bardach v. Comm'r, 6 Cir., 90 F.2d 323, 326; Nichols v. Comm'r, 3 Cir., 44 F.2d 157, 159. Where the testimony before the Board ought to have been convincing it may not arbitrarily be disregarded.

We are not in accord with the Board's decision. We think that the evidence considered in the aggregate is not legally sufficient to support it, or, put in another way, that it is contrary to the indisputable character of the evidence. See Tracy v. Com'r, 6 Cir., 53 F.2d 575, 579. Every case must stand upon its own peculiar facts and circumstances and we think that the present case aligns itself with Toledo Grain & Milling Co. v. Com'r, supra. The claimed deductions should have been allowed and the decision of the Board is accordingly reversed and the case remanded with directions to enter a decision consistent herewith.