Edgcomb Steel Corporation v. Commissioner.
Edgcomb Steel Corp. v. Commissioner
Docket No. 2935.
United States Tax Court
1944 Tax Ct. Memo LEXIS 21; 3 T.C.M. (CCH) 1309; T.C.M. (RIA) 45101; December 4, 1944
*21 Herbert C. Smyth, Jr., Esq., for the petitioner. Jonas M. Smith, Esq., for the respondent. ARUNDELL
Memorandum Findings of Fact and Opinion The Commissioner has determined deficiencies against petitioner for the taxable year 1941, as follows: Declared Value Excess
Excess
Income Tax
Profits Tax
Profits Tax
$10,283.03
$488.09
$35,066.25
Certain adjustments made in the notice of deficiency are not contested by petitioner. The sole issue is whether salaries paid by petitioner to its principal officers were reasonable within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code. Income and Declared Value Excess-Profits tax return and Excess Profits tax return for the taxable year 1941, were filed by petitioner with the Collector of Internal Revenue for the fifth district of New Jersey. Findings of Fact Petitioner, a New Jersey corporation, organized in 1926, conducts a business as mill agent, sales agent, and territorial distributor for steel manufacturers. Its business office and warehouses are located at Hillside, New Jersey. H. L. Edgcomb, whose name petitioner bears, together with J. H. Roberts, M. O. Kopperl, and G. L. Tillson, promoted and organized *22 the petitioner corporation, and have continuously been its principal officers. Petitioner commenced business with a capital of approximately $100,000. Its plan of operation has been to provide a warehouse and, upon an agreement with various steel manufacturers, to put in stocks of steel on a consignment basis. Petitioner has also purchased and resold for its own account and has sold for various manufacturers on commission. It maintains a sales force and has installed precision machinery for cutting and sewing, and for testing the temper of steel. During the earlier years of its operation petitioner had a difficult time financially. Its capital was invested principally in a warehouse and equipment. From the outset of its organization it was necessary that petitioner obtain sources of supply of steel under an arrangement whereby it could use the resources of the suppliers to help finance its own business. Its officers obtained money from banks and from their life insurance to keep the business running. They took little in the way of executive compensation compared to the services they rendered and their worth to the company. The success of the enterprise required a knowledge of the *23 industry and also it required business connections. Edgcomb, the president, started in the industry in 1912, and had held important positions with other corporations engaged in the same line of business as petitioner. Roberts, the petitioner's vice president, was a metallurgical engineer and since 1910, he had held numerous important positions in the steel industry. Kopperl, the secretary, and Tillson, petitioner's treasurer, were also well experienced. Tillson had been in the steel business since 1919, and Kopperi for a lesser length of time. The ultimate success of petitioner is due largely to the ability and reputation of the above officers and to the confidence of the industry in their integrity. Petitioner's gross sales rose steadily from $983,245 in 1935, except for a slight recession in 1938, to $6,829,177 in 1942, and amounted to $4,848,363 in 1941. Net invested capital and surplus rose from the initial investment to a total of $405,260 in 1941. The increase was provided principally from earnings. Very little outside capital was paid in. Total salaries paid officers since 1937 ranged from $53,405 in that year, with a low of $42,588 in 1938, to $140,005 in 1941. In 1940 petitioner *24 paid salaries in the total sum of $80,061, and in 1942 the salaries of the officers totaled $137,666.42. On December 31, 1941, petitioner had outstanding 3,257 shares of common stock. Of that number 2,797 shares were owned by Messrs. Edgcomb, Roberts, Kopperl, and their families, including brothers and sisters, and by Tillson. The remaining shares were owned largely by employees of petitioner. On the same date there were outstanding 375 shares of $100 par value, six per cent cumulative, preferred stock. In 1941 petitioner paid dividends on its common stock in the cash amount of $28,698, and it also paid two stock dividends during the year, one of 25 per cent and another of 10 per cent. By resolutions, dated March 15, 1941, June 3, 1941, and August 13, 1941, petitioner's board of directors voted to pay the above officers bonuses of one month's, two months', and one month's salaries, respectively. In these same resolutions the board authorized bonus payments to other employees of the corporation and resolved that the final salaries to be paid the officers should be fixed after further consideration. On October 21, 1941, the board passed a resolution fixing the salaries of the officers *25 at $25,000 for the president, $20,000 for the vice president, $12,500 for the secretary, and $12,500 for the treasurer. At the same time it voted a bonus of $69,437.70 for all salaried employees of the corporation. The bonuses were to be paid in cash, common stock, preferred stock, or combination thereof, at the option of the individual employee. The amount of bonus to be paid each employee was ascertained and specified by the board. The amounts of the bonuses provided for the officers were: Edgcomb, $18,333.48, Roberts $15,000, Tillson $9,166.68, and Kopperl $8,750. Each of the above officers chose to take a part of their bonus in preferred stock at $100 per share. Edgcomb received $5,800 in preferred stock, Roberts received $5,000, Kopperl $2,600, and Tillson $2,900. The total compensation paid to the officers by petitioner during the taxable year 1941 were as follows: Edgcomb $49,999.66, Roberts $39,999.79, Kopperl $24,999.99, and Tillson $25,005.99. Throughout the taxable year the officers whose salaries are being considered, devoted their full time and attention to the affairs of the company. Edgcomb discharged the duties of his office as president, Roberts, in addition to being *26 vice president, was in charge of sales. Kopperl had charge of the stainless steel end of the business, as well as being the corporation's secretary. Tillson, the company's treasurer, was in charge of the warehouse department and the accounting department, including credits and collections. During 1941, petitioner constructed nine new buildings, the principal one being a warehouse which was designed by Kopperl. Tillson supervised the construction of this building and the moving of stocks and equipment into it when completed. These duties were performed by Kopperl and Tillson in addition to their usual duties and they were regarded as an incident to their regular work. In fixing the total compensation to be paid the officers, petitioner's board of directors took into account the past services rendered by these officers and the fact that in some past years inadequate salaries were paid them. The salaries paid the officers in 1941 were not proportionate with the stockholdings of the individual officers, nor were they distributions of profits. The salary paid each officer by petitioner in 1941, was reasonable compensation for services actually rendered by him. In the notice of deficiency *27 the respondent determined that reasonable allowances for the salaries of the respective officers were as follows: Edgcomb $30,792.28, Roberts $23,094.48, Kopperl $13,087.24, and Tillson $13,087.30. Opinion ARUNDELL, Judge: We have here the familiar question whether the salaries paid to the officers of a closely held corporation may be regarded as reasonable within the meaning of section 23 (a) (1) (A) of the Internal Revenue Code. As is usual in such cases, we have the determination of the Commissioner that the salaries are excessive and the testimony offered on behalf of the taxpayer that they are reasonable. The salaries have been fixed by the board of directors. We have found that they bear no close relationship to stockownership and may not be regarded as a distribution of earnings in disguise. The treasurer of the American Rolling Mill Company, and a certified public accountant, familiar with companies engaged in a similar business, both testified that they regarded the salaries as being in line with those paid by companies similarly situated and operating related businesses. It seems clear that there was a large measure of personal service in petitioner's activities and that *28 the success of the enterprise was due almost entirely to the ability, personality, and drive of these four men. While the salaries were higher in the current year than in former years, the business had been increasing at a rapid rate, with both the gross and net profits much higher than in former years. Measured by gross sales the salaries amounted to only 2.9 per cent. A liberal dividend policy was followed in the current year, and the salaries carried a recognition of the fact that those paid in earlier years were inadequate. Ox Fibre Brush Co. v. Commissioner, 281 U.S. 115, 74 L. Ed. 733, 50 S. Ct. 273. We regard the salaries as reasonable in the circumstances. Cf. Capitol-Barg Dry Cleaning Co. v. Commissioner, 131 F.2d 712; General Smelting Co. v. Commissioner, 4 T.C. 313; Toledo Grain & Milling Co. v. Commissioner, 62 F.2d 171. The respondent presents the further contention that the compensation paid these four officers in preferred stock of petitioner may in no event be deducted, as there is no evidence in the record as to the value of such shares. The notice of deficiency *29 and the answer to the petition certainly do not specifically put this point in issue, although in the respondent's opening statement at the time of the trial he gave notice that he would raise the question. We think there is no merit in this contention. The bonuses were payable in cash, common stock, preferred stock, or any combination thereof solely at the option of the employees. The fact that each of the officers saw fit to take some part of the bonus in preferred stock, accepting the same at its par value, is of no consequence. Petitioner does not seek a deduction in an amount greater than it was obligated to pay in cash, and the salaries being otherwise reasonable, we have no doubt that the deduction was allowable in the circumstances. Liquid Carbonic Corp., 34 B.T.A. 1191. Nor do we think there is any merit in respondent's contention that some part of the salaries paid to Kopperl and Tillson should be disallowed by reason of the fact that they gave some time to supervision of the construction of the warehouse. Respondent's argument that this sum should be capitalized and not allowed as a deduction is, on the facts here, without merit. Decision *30 will be entered under Rule 50.