## WRIGHT–BERNET, Inc., v. COMMISSIONER OF INTERNAL REVENUE.

### No. 10701.

United States Court of Appeals Sixth Circuit.

Feb. 4, 1949.

Robert S. Marx, of Cincinnati, Ohio (Frank E. Wood, Robert S. Marx and John J. Luhrman, of Nichols, Wood, Marx & Ginter, all of Cincinnati, Ohio, on the brief), for petitioner.

Louise Foster, of Washington, D. C., (Theron L. Caudle, George A. Stinson, Ellis N. Slack and Fred E. Youngman, all of Washington, D. C., on the brief), for respondent.

Before ALLEN, MARTIN, and MILLER, Circuit Judges.

ALLEN, Circuit Judge.

This is a petition to review a decision of the Tax Court which established deficiencies against the petitioner in the declared value excess profits tax for the calendar year 1942 in the amount of $507.-74; a deficiency in excess profits tax for the calendar year 1942 in the amount of

$2,943.65; and a deficiency in the excess profits tax for the calendar year 1943 in the amount of $12,405.25. The deficiencies, with interest, were paid under protest.

The deficiencies determined by the Commissioner were materially reduced by the Tax Court. As prsented here, they are based upon disallowance by the Tax Court of a part of the compensation paid by petitioner in the taxable years to Frank Bernet, its president; J. Warren Beahn, its vice president; Hubert A. Bernet, its secretary; and Carl Bernet, its treasurer. The salaries paid by the petitioner, the amounts allowed by the Commissioner, and the amounts allowed by the Tax Court, are the following:

| Officer 1942 | Amount Deducted | Amount Allowed by Commissioner | Amount Allowed by Tax Court |
|---|---|---|---|
| Frank W. Bernet | $16,180.00 | $11,000.00 | $16,040.00 |
| Carl F. Bernet | 15,140.00 | 10,000.00 | 15,000.00 |
| Hubert A. Bernet | 15,140.00 | 10,000.00 | 15,000.00 |
| J. W. Beahn | 15,140.00 | 10,000.00 | 15,000.00 |
| | $61,600.00 | $41,000.00 | $61,040.00 |
| **1943** | | | |
| Frank W. Bernet | $19,240.00 | $11,000.00 | $16,040.00 |
| Carl F. Bernet | 18,200.00 | 10,000.00 | 15,000.00 |
| Hubert A. Bernet | 18,200.00 | 10,000.00 | 15,000.00 |
| J. W. Beahn | 18,200.00 | 10,000.00 | 15,000.00 |
| | $73,840.00 | $41,000.00 | $61,040.00 |

The facts are not controverted, and are as follows:

Petitioner is an Ohio corporation, having its principal place of business in Hamilton, Ohio, and is engaged in the manufacture of brushes, which is a highly technical business. It makes over 400 different kinds of standard brushes, and in addition manufactures brushes for different types of work upon special order. In 1934 the employees named, together with William A. Wright, all of whom had been engaged in the brush business for many years, formed the petitioner corporation and invested their savings in it, and 130 shares of common stock of the par value of $100 a share were issued, and later preferred stock was issued and the amount of common stock was increased. During the taxable years Beahn owned 65 shares of the common and 10 shares of preferred stock, and each of the three Bernets owned 40 shares of the common and 10 shares of preferred. Thus altogether the Bernet brothers and Beahn owned approximately 75% of the outstanding common stock, and 32% of the outstanding preferred stock.

Up to the time of his death in July, 1940, William A. Wright, the president, was in charge of all production problems, including purchasing, employment, and supervision of personnel; while the three Bernets and Beahn handled all sales. In the early years of the petitioner's existence only a nominal compensation was given Wright and the Bernets and Beahn for their services. For each of them this amounted in 1935 to $905; in 1936 to $1,387.50; in 1937 to $1,601.25; in 1938 to $2,565; and in 1939 to $2,270. After Wright's death it was decided that the four survivors should take over his management duties, in addition to continuing to sell the entire output of the corporation. Since then, and during the taxable years, each of the employees in question has taken his turn in the office in supervising production, purchasing, employment, and personnel. No purchasing agent, employment manager, credit manager, or advertising agency has been employed by the corporation, and also it has employed no engineers to design, build, and repair special machinery. Improvements and special attachments on the corporation's machinery have been designed and constructed by these four employees.

In the first year of the corporation's business it had net sales of $80,000, which increased to $757,000 in 1942. Sales in 1943 were reduced to $570,000 because of difficulties in getting material for shipments, and other war restrictions, but a large amount of orders were unfilled on the corporation's books. Of the $757,000 net sales in 1942, less than one-seventh represented war contracts, the remainder of the net sales being sales to petitioner's regular customers.

The success of the business is shown by the record to be due mainly to the work of the four employees whose salaries are in question. They took no vacations, and each worked approximately 60 to 75 hours a week. The salaries for which the deduction was claimed were established by resolution of the board of directors in 1942, and are still in effect. The individual

salary was not proportionate to the employee's stockholding interest, for Beahn, who had the greatest number of shares of common stock, received less compensation than Frank Bernet, and only the same as Carl Bernet and Hubert Bernet.

The Tax Court considered that this case did not require the application of the doctrine of the presumptive correctness of the Commissioner's determination, and decided that it called for a decision upon its facts. While the findings of fact give full credit to the experience, qualifications, ability, and unusual industry of the four employees, and the Tax Court reduced the deficiencies found by the Commissioner, it made substantial reductions in the salaries fixed by the corporation. The Tax Court did not discuss the evidence at length.

At the trial, in addition to the testimony of the four employees, who were also directors, that the salaries fixed were reasonable, the testimony of a salesman for a competing brush manufacturer was given. He stated that ordinarily salesmen who do nothing but sell receive a compensation of approximately 10% of sales and an additional allowance of 2½% commission to cover expenses in calling on out of town trade. The total compensation paid the four employees in 1942 was $61,600, less than 10% of the petitioner's net sales for that year. The compensation paid in 1943 exceeds 10% of the net sales; but the excess amounts to only $4,210 for each of the four employees over and above the 10% commission which would be allowed a salesman.

Also it was stipulated that another witness, member of the executive committee of the American Brush Manufacturers Association and secretary of one of petitioner's competitors, if called, would testify that the compensation paid these four men was "in line with the compensation paid in the industry for similar services." The Commissioner offered no evidence upon this subject.

■ As the payments were unquestionably "purely for services" [Treasury Regulations 111, § 29.23(a)-6], the single question before the Tax Court was the reasonableness of the compensation. This, of course, is a question of fact.

■ In considering this question we have jurisdiction to review the decision of the Tax Court in the same manner and to the same extent as a decision of the District Court in civil actions without a jury. Section 1141(a), 26 U.S.C.Int.Rev.Code, 26 U.S.C.A. § 1141(a). This Act became effective September 1, 1948. While the petition to review herein was filed before that date, the statute was in effect before the hearing in this court; and as the cited section deals with procedure only, the amendment controls and defines our authority in review.

■ Under this amendment, in reviewing decisions of the Tax Court, we not only are to decide questions of law, but are to consider the findings of fact. Aetna Life Ins. Co. v. Kepler, 8 Cir., 116 F.2d 1, 4. As stated in that case:

"Prior to the effective date (September 16, 1938) of the Rules of Civil Procedure, the findings of fact of a trial court, in an action at law tried without a jury, were as conclusive, upon review, as a verdict of a jury, and could not be set aside by the reviewing court if there was any substantial evidence to support them. A different rule prevailed in equity cases. The findings of fact of the trial court in such cases were presumptively correct, and, unless clearly against the weight of the evidence or induced by an erroneous view of the law, would not be disturbed by a reviewing court. * * *

"The effect of Rule 52(a) was to establish a uniform standard for testing the validity of findings of fact in any case tried without a jury. The standard adopted was that which had always prevailed in equity.

"This Court, with respect to jury-waived cases, is no longer merely a court of error which considers only questions of law. It now acts as a court of review in all non-jury cases in accordance with the practice which formerly prevailed in equity appeals.

"The findings of fact of the court below to the extent that they are unsupported by substantial evidence, or are clearly against the weight of the evidence, or were induced by an erroneous view of the law, are not binding upon this Court."

We bear in mind that the findings of fact are not to be set aside unless clearly erroneous, and that due regard must be given to the opportunity. of the trial court to judge of the credibility of the witnesses, Rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.A.; but the credibility of the witnesses was not attacked here in any way. The Tax Court in its findings of fact adopted and reiterated the material evidence introduced by the petitioner, and then decided that the compensation of each employee for one year was unreasonable in the amount of $140, and for the second year in a greater amount. As the petitioner's witnesses were qualified and unimpeached, and no evidence was given to the contrary, their testimony should have been accepted. Capital-Barg Dry Cleaning Co. v. Commissioner, 6 Cir., 131 F.2d 712.

Viewing the case from another angle, no substantial evidence supports the decision of the Tax Court. The substantial evidence supports the reasonableness of the salaries.

The decision of the Tax Court is reversed and the case is remanded for further proceedings in accordance with this opinion.