**AUTOMATIC CIGARETTE SALES CORPORATION, Petitioner,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

No. 7152.

United States Court of Appeals Fourth Circuit.

Argued April 18, 1956.

Decided June 5, 1956.

Thurman Hill, Washington, D. C. (Arthur J. Swanick, Washington, D. C., on the brief), for petitioner.

Homer R. Miller, Atty., Dept. of Justice, Washington, D. C. (Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson and A. F. Prescott, Attys., Dept. of Justice, Washington, D. C., on the brief), for respondent.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This case involves deficiencies in income, declared value excess profits and excess profit taxes for the year 1944, in the sum of $132,725.14. The principal questions for decision concern (1) the inclusion in the taxpayer's income of the sum of $73,246 paid by the taxpayer in fines for the illegal operation of slot machines in Wheeling, West Virginia and (2) the amount allowed by the Commis-

sioner of Internal Revenue for depreciation on taxpayer's slot, music and cigarette machines.

Automatic Cigarette Sales Corporation was engaged in the business of buying, selling and operating cigarette, juke box, game, slot and other machines. The corporation was controlled by William G. Lias, its president and principal owner, who was tried and acquitted on the charge of income tax evasion in the District Court of the Northern District of West Virginia in June, 1949. Some of the evidence given at the trial of the criminal case was received by the Tax Court in the pending case under a stipulation of the parties. The record shows that in 1944 the taxpayer installed a large number of gambling slot machines in various locations in the city of Wheeling and divided the proceeds of the operations between itself and the proprietors of the stores where the machines were placed. These operations were in violation of § 6094(1) of the West Virginia Code of 1949 [61–10–1], and of § 32 of Ordinance 38 of the City of Wheeling. The use of the machines, however, was permitted under an arrangement between Lias and the city authorities whereby fines of $100 and costs were imposed periodically upon the operation of each machine after a check by the city police department. When the check was complete the chief of police notified the taxpayer of the number of machines and the names and addresses of the location proprietors. The list was then handed to the judge of the police court, who imposed fines and costs in the names of the location proprietors and made an official record thereof. The taxpayer's name did not appear on these lists. The location proprietors, however, were never served with warrants and were never brought into court. The city looked to the taxpayer for the payment of fines and the taxpayer actually paid them. The only information which the location proprietors had as to the imposition of the fines was that the taxpayer's collectors deducted the amount of the fines from the monies taken from the machines. There was some varia-

tion in the testimony as to the procedure for the division of these monies. The testimony of most of the location proprietors who appeared as witnesses, however, showed that the money was first divided equally between the proprietor and the collector, but then the amount of the fine was deducted from the proprietor's share and retained by the collector.

Taking this testimony in connection with the records of the police court, which indicated that the fines were levied against the location owners and not against the taxpayer, the contention is made on its behalf that the monies used to pay the fines did not constitute income of the taxpayer but merely passed through its hands as the agent of the proprietors against whom the charges were filed. The taxpayer relies in this connection on Clark v. Commissioner, 19 T.C. 48, where the court held in a slot machine case that monies taken from the machines by the owner and used in the payment of fines imposed upon the owner and the location proprietor jointly should be treated to the extent of one-half as the income of the owner and one-half as the income of the proprietor. The court found that the latter one-half merely passed through the taxpayer's hands as a conduit and that he derived no benefit therefrom.

■ Without expressing any opinion as to the correctness of this decision, we are satisfied that the Tax Court was justified in refusing to follow it as a precedent in the pending case. The evidence clearly warrants the finding that the taxpayer was not only the owner of the machines but also the operator and manager of the business through its president and principal owner to whom the city looked for payment of the fines which had been agreed upon. Certainly the shopkeepers as well as the corporation were guilty of violating the law and were subject to the payment of the fines; but the Tax Court was not obliged to accept the police records as a correct statement of the legal position of the parties in what was evidently an irregular and illegal transaction. Hence the payment of

part of the proceeds of the business to the local proprietors for the use of their premises and the listing of the charges in the police court in their names may fairly be regarded as incidents of a business which belonged to the corporation. In this view, the money used in the payment of the fines was part of the taxpayer's income but it was not deductible as an ordinary and necessary business expense under § 23 of the Internal Revenue Code, 26 U.S.C.A. because it was incurred in the violation of a State statute and a city ordinance and a tax deduction would frustrate the sharply defined policy of the commonwealth. Commissioner of Internal Revenue v. Heininger, 320 U.S. 467, 64 S.Ct. 249, 88 L.Ed. 171; Lilly v. Commissioner, 343 U.S. 90, 72 S.Ct. 497, 96 L.Ed. 769; C. I. R. v. Doyle, 7 Cir., 231 F.2d 635.

The question of depreciation turns on a finding of fact as to the length of the useful life of the taxpayer's machines. The taxpayer rests its case in this regard, for the most part, on the testimony of an expert witness, while the Commissioner depends upon the presumption of correctness which attends his determinations, the practice of the taxpayer in regard to depreciation in prior years, and the failure of the taxpayer to produce any witness with actual knowledge of the machines in question.

Prior to 1940, before the enactment of the excess profits tax law, the taxpayer calculated depreciation of its slot machines on the basis of a 3-year life for new and a 2-year life for used machines, and depreciation of its cigarette and music machines on the basis of 5 years for new and 3 years for used machines. After 1940 the taxpayer made no distinction between new and used machines and attributed a life of 1 year to slot machines and a life of 4 years to cigarette and music machines.

For the year 1944 the taxpayer claimed depreciation in the amount of $38,-700.87 for slot machines, $11,672.41 for music machines, and $1,084.30 for cigarette machines, and having sold a large part of the machines in that year reported a capital gain on the reduced cost basis of $101,788.86. The Commissioner adjusted the depreciation rates to correspond to those used by the taxpayer prior to 1940 and made a determination which reduced the taxpayer's capital gains to $74,582.09 but increased the taxable income from the taxpayer so as to create the tax deficiencies under consideration.

The taxpayer relies for its rate of depreciation on the testimony of a machine repairman who entered its employ in 1937 at the age of 18, served in the army from 1942 to 1946 and returned to the taxpayer at the end of his military service. He had no actual knowledge of conditions in the business between 1942 and 1944. He testified that the mechanical machines had a possible life of 18 months, a longer period than that claimed by the taxpayer, and that the music and cigarette machines had a possible life of 5 years, the period used by the taxpayer prior to 1940 and adopted by the Commissioner in this case. Hence his testimony supported the claim of the taxpayer only in respect to electrical machines and did not support its claim with respect to gambling slot machines or the music and cigarette machines. Moreover, his testimony showed that the taxpayer kept service and shop machine records, and these were not produced at the hearing.

■■ We think that the Tax Court was entirely justified in holding that this testimony was insufficient to sustain the taxpayer's contention. Taken at its face value it failed in important particulars to support the taxpayer's calculations and it was not corroborated by evidence of the actual length of life of the machines, either from the taxpayer's records or the testimony of persons who had personal experience in handling the articles. There are cases in which it has been held that the rejection of uncontradicted testimony by the Tax Court constitutes reversible error, see Wright-Bernet, Inc., v. Commissioner, 6 Cir., 172 F.2d 343; Mayson Mfg. Co. v. Commissioner, 6

Cir., 178 F.2d 115; but it is the duty of the Tax Court to weigh expert as well as factual evidence and to reject it when there is reason to believe that it is unreliable. See Dayton Power & Light Co. v. Public Utilities Commission, 292 U.S. 290, 299, 54 S.Ct. 647, 78 L.Ed. 1267; Miles-Conley Co. v. Commissioner, 4 Cir., 173 F.2d 958. We think that the Tax Court exercised this authority in a proper manner in the pending case.

In addition to the arguments on the merits, the taxpayer now contends that the Tax Court denied it due process by refusing motions filed on its behalf to vacate and reconsider the court's adverse decision and to allow it to produce additional testimony bearing on the controversial issues. The motion for reconsideration contained an offer to produce William G. Lias as a witness to the transactions involved and as an expert with regard to the useful life of the machines; and also an offer to produce one Jacob Dobkin, a competitor of Lias in a similar business in the city of Wheeling, as an expert on the same subject. The failure to produce Lias at the hearing was explained on the ground that he was unable to attend because he was mentally and physically exhausted by the strain of the long, drawn out trial of his personal tax case in Washington, which preceded the trial of the case at bar; and the failure to produce Dobkin was explained on the ground that he was also involved in a tax dispute with the Government and deemed it incompatible with his own interests to appear at the time as an expert witness on behalf of the taxpayer. We think that this contention is without merit. No application was made by the taxpayer for a continuance of the pending case before or during the trial and no claim is made that there were no other witnesses who could testify either as to the facts of the business or as to the useful life of the machines. It is obvious that the Tax Court was guilty of no abuse of discretion in dismissing the motions.

Affirmed.