THE ESTATE OF VINCENT DeNIRO, DECEASED, HELEN M. PAPALIA AND JOANNE F. DeNICHOLAS, ADMINISTRATRICES, LOUIS R. DeNIRO, TRANSFEREE, FRANK DeNIRO, TRANSFEREE, AND MICHAEL DeNIRO, TRANSFEREE, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of De Niro v. Commissioner
Docket No. 9178-76.
United States Tax Court
T.C. Memo 1985-128; 1985 Tax Ct. Memo LEXIS 495; 49 T.C.M. (CCH) 1004; T.C.M. (RIA) 85128; March 25, 1985. James C. Herndon,William T. Walker, and Robert W. Malone, for the petitioners. Richard S. Bloom and Buckley D. Sowards, *496 for the respondent. WILES
SUPPLEMENTAL MEMORANDUM FINDINGS OF FACT AND OPINION WILES, Judge: The Court of Appeals for the Sixth Circuit remanded this case for us to reconsider the sufficiency or insufficiency of the earnings and profits of National Cigarette Service, Inc. (NCS), for purposes of determining the proper tax treatment of a constructive dividend received by petitioner, Estate of Vincent DeNiro, during 1969. We were not directed to hold further hearings on this issue; indeed to do so would give petitioners a second bite at the apple. Therefore, to the extent necessary, we find the facts to be as set forth in the findings of fact in our opinion filed in the Estate of DeNiro v. Commissioner,T.C. Memo. 1982-497.However, because NCS's earnings and profits is a factual question, it is necessary to make additional findings of fact from the record presented at the original trial herein. NCS was incorporated in the State of Ohio during 1955 and has been a corporation in good standing since that year. NCS reported on its 1969 U.S. corporate income tax return (Form 1120) that it had taxable income of $33,031.64 before net operating loss deduction. *497 On an amended 1969 U.S. corporate income tax return (Form 1120X) NCS reported a net loss for the year ending December 31, 1969, in the amount of $40,494.05.On its amended return, NCS deducted, as a business expense, a $89,257.04 payment to satisfy the estate tax liability assessed against the estate of Vincent DeNiro. On March 21, 1979, NCS paid $7,000 in settlement of a complaint filed by the United States, in the United States District Court for the Northern District of Ohio, for an erroneous income tax refund which resulted from NCS's deduction of the $89,257.04 payment during its 1969 taxable year. The dispute herein involves NCS's $89,257.04 payment in 1969 to satisfy the estate's tax liability. Petitioners argue that NCS's earnings and profits were less than the $89,257.04 payment and, therefore, only part of the payment can be considered a constructive dividend. In our original opinion, we found "the evidence contained in the record is insufficient to establish the accumulated earnings and profits of * * * [NCS] * * *." As directed by the Sixth Circuit, we must make "a more specific determination about the sufficiency or insufficiency of the earnings and profits of NCS. *498 " Estate of DeNiro v. Commissioner,746 F. 2d 327, 333 (6th Cir. 1984). The Court of Appeals further stated: If, upon reconsideration, the tax court concludes that NCS's contention is corrct at least in part and that some portion of the $89,257 considered as a constructive dividend should be treated as a reduction in basis, it should so indicate and set forth how the sum should be allocated. If the tax court considers that the evidence is insufficient to support the petitioners' contention, it should set out in what respect petitioners have failed to meet the necessary criteria to establish the amount of the 1969 earnings and profits. [746 F. 2d at 333; Emphasis added.] After careful reconsideration of the entire record, we must conclude, as we did in our original opinion, that petitioners have failed to carry their burden of proof in establishing NCS's accumulated earnings and profits and, accordingly, we must sustain respondent's determination. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering290 U.S. 111 (1933). The term earnings and profits is not defined in the Internal Revenue Code and does *499 not correspond exactly to taxable income or any of the corporate accounting concepts. See Commissioner v. Wheeler,324 U.S. 542 (1945), rehearing denied 325 U.S. 892 (1945). "[Earnings and profits] is not an account which will appear on a corporation's books or even on its tax return, and the earnings and profits account will probably be different from the retained earnings or earned surplus accounts that appear on financial balance sheets." Jacoby, Earnings and Profits: A Not So Theoretical Concept-Some Winds of Change, 29 NYU Inst. Tax 649, 653 (1971, Part 1). A corporation's earnings and profits may be derived by making adjustments for items and transactions that are treated one way in computing taxable income and another way in computing earnings and profits. See B. Bittker & J. Eustice, Federal Income Taxation of Corporations and Shareholders, par. 7.03 at 7-15 (4th ec. 1979). For example, to derive a corporation's earnings and profits its taxable income must be adjusted for: (1) certain items excluded from taxable income which must be included in earnings and profits such as interest from state and local obligations [see sec. 1.312-6(b), *500 Income Tax Regs.]; (2) certain items deducted in computing taxable income which are not deducted in computing earnings and profits such as the section 243 [1] dividends received deduction [see sectdion 1.312-11(a), Income Tax Regs.], and the section 172 net operating loss deduction [see section 1.312-5(d), Income Tax Regs.]; and (3) certain items that cannot be deducted in computing taxable income which may be deducted in computing the earnings and profits such as Federal income taxes, excess charitable contributions, and nondeductible losses [see section 1.312-7(b)(1), Income Tax Regs.]. B. Bittker & J. Eustice, supra at par. 7.03. A distribution of property by a corporation to its shareholders is taxable as a dividend to the extent of its current earnings and profits calculated at the end of its taxable year, and then to the extent of its earnings and profits accumulated since February 28, 1913, or the date of its incorporation, whichever is later. Section 316(a)(1); section 1.316-2(a)(b), Income Tax Regs. The amount of the distribution which exceeds a corporation's earnings and profits *501 is characterized as a return of capital to the extent of a shareholder's basis in his stock [sections 316(a), 301(c)(2)]; to the extent that the payments exceed the shareholder's basis in his stock, the excess is treated as capital gains [2] [sections 316(a), 301(c)(3)]. We begin our analysis with a computation of NCS's current earnings and profits calculated at the end of its 1969 taxable year; it is undisputed that, to the extent thereof, the $89,257.04 payment is taxable as ordinary income. We agree with petitioner's computation that at the end of its 1969 taxable year NCS had current earnings and profits in the amount of $41,762.99. [3] Thus, that amount of the $89,257.04 payment is taxable as ordinary income; the excess is taxable as ordinary income to the extent of NCS's accumulated earnings and profits. *502 In the instant case, the only evidence petitioners submitted to establish NCS's accumulated earnings and profits consists of the following: (1) NCS's 19869 U.S. corporate income tax return; (2) NCS's 1969 amended corporate income tax return; [4] and (3) the testimony of Mr. Rogan, NCS's accountant, that as of January 1, 1969, NCS had a "deficit balance of $96,335.90." For the reasons set forth below, we believe that this evidence is insufficient to establish NCS's accumulated earnings and profits. NCS was incorporated in 1955 and to arrive at a correct determination of its accumulated earnings and profits, adjustments need to have been made to the taxable income and retained earnings of the corporation from 1955 through 1969. Petitioner did not produce any evidence that the proper adjustments were made to NCS's taxable income and retained earnings since 1955 to derive NSC's accumulated earnings and profits as of January 1, 1969. What petitioner did present at trial was a schedule, attached to NCS's 1969 amended corporate tax return, titled "Reconciliation *503 of of Retained Earnings Account." According to this schedule, the balance of retained earnings as of December 31, 1967, was ($105,484.64). NCS made various adjustments, based upon a IRS audit for the years 1962 through 1967, to the retained earnings account and arrived at a revised balance as of December 31, 1968, of ($96,335.90). We are not bound to accept testimony at face value even when it is uncontroverted if it is improbable, unreasonable, or questionable. Commissioner v. Smith,285 F. 2d 91, 96 (5th Cir. 1960); Lovell and Hart, Inc. v. Commissioner,456 F. 2d 145, 148 (6th Cir. 1972). Mr. Rogan's assertion, that as of January 1, 1969, NCS had an accumulated earnings and profits deficit of $96,335.90, although uncontroverted, nonetheless is highly questionable. As we stated earlier, accumulated earnings and profits does not correspond exactly to a retained earnings account, and Mr. Rogan used these terms synonymously. Indeed, the schedule attached to NCS's amended return is titled "Reconcilation of Retained Earnings Account." Petitioners failed to submit any evidence which established that NCS's retained earnings were the same as its accumulated *504 earnings and profits. Moreover, no corroborating evidence was presented to substantiate that the alleged $105,484.64 deficit in retained earnings as of December 31, 1967, was the result of proper adjustments to NCS's taxable income and retained earnings from 1955 through 1967. [5] Nor did petitioners adeuately explain the nature of the adjustments made to the deficit for the years 1967 through 1969. Finally, on NCS's 1969 amended return, it reported that it earned taxable income for the years 1966, 1967, and 1968 in the respective amounts $19,309.61, $35,401.60, and $9,719.91. We find it difficult to reconcile petitioners' claim of an accumulated earnings and profits deficit with NCS's consistent pattern of earnings from 1966 through 1969.This was unexplained by Mr. Rogan and makes his testimony concerning NCS's accumulated earnings and profits deficit even less believable. Accordingly, we must hold, as we did in our original opinion, that petitioners have failed to carry their burden of proof on this issue. See Automatic Cigarette Sales Corp. v. Commissioner,234 F. 2d 825, 827 (4th Cir. 1956), affg. a Memorandum Opinion of this Court. [6]
*505 To reflect the foregoing, Our prior decision will be reentered
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩
2. This is assuming, of course, that the stock is a capital asset in the shareholder's hands.↩
3. During 1969, NCS reported a net loss of $40,494.04 on its amended corporate tax return. Because this net loss included a deduction for the estate tax payment of $89,257.04, which was a nondeductible expense, Mr. Rogan, NCS's accountant, adjusted its current (1969) earnings and profits to $48,762.99. He further adjusted the current earnings and profits to reflect the $7,000 payment made in 1977 to settle the suit brought by the United States to recover an erroneous income tax refund which resulted from NCS's deduction of the estate tax payment on its amended 1969 tax return.↩
4. We note that NCS's corporate income tax returns for the years 1955 through 1968 are not part of the record herein.↩
5. Mr. Rogan has been NCS's accountant since 1969 or 1970.He was initially engaged by NCS's officers "to participate in a tax situation involving the years 1962 through 1967." There is no evidence that Mr. Rogan ever examined the corporate books and records for the years 1955 through 1967 in order to make the proper adjustments to the retained earnings account which would be necessary to derive NCS's earnings and profits, as of December 31, 1967. ↩
6. Although permitted to do so by the Court of Appeals, because of our resolution of this issue, we need not reconsider respondent's alternative argument that NCS's payment of the estate tax liability constitutes ordinary income to the estate regardless of NCS's earnings and profits.↩